C. Brooks Cutter, SBN 121407
KERSHAW CUTTER & RATINOFF LLP
980 9th Street, 19th Floor
Sacramento, California 95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

Mark L. Brown
THE LAKIN LAW FIRM
300 Evans Avenue
P.O. Box 229
Wood River, IL 62095
Telephone: (618) 254-1127
Facsimile: (618) 254-0193

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY CASTILLO, NICHOLE BROWN, and BARBARA GLISSON, *Individually and on behalf of all others similarly situated*,<br><br>        Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS CORPORATION, DOES 1 through 50, inclusive,<br><br>        Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, Kelly Castillo, Nichole Brown, and Barbara Glisson, individually and on behalf

of all others similarly situated, for their Class Action Complaint against General Motors

Corporation (hereinafter "GM"), allege the following:

### CASE OVERVIEW

1.        Plaintiffs bring this action on behalf of themselves and a class of Saturn vehicle

owners in the States of California, Florida, Georgia, Illinois, Massachusetts, Michigan, Missouri,

-1-

New Jersey, New York, North Carolina, Ohio, and Oklahoma (the "Class States") whose defectively designed Saturn Vti transmissions have experienced a failure that GM failed or refused to fully remedy.

2.     GM manufactures and sells vehicles worldwide under the Saturn brand name, among others.

3.     From 2002 until at least 2004, GM manufactured, sold and/or distributed certain vehicles containing the Saturn Vti transmission. The Vti transmission is inherently prone to premature failure due to its defective design and/or due to negligent manufacture. When the Vti transmission fails, it renders the vehicle inoperable and necessitates very costly repairs, often exceeding the (now diminished) value of the vehicle.

4.     Upon information and belief, GM was aware when it introduced the Vti transmission in 2002 of the inherent design flaws and problems with the Vti, and GM was aware that the Vti transmissions it sold were likely to experience premature failure. Despite this exclusive knowledge, GM failed to disclose this material information to consumers.

5.     Many owners of Saturn Vti transmissions have had to repair or replace their Vti transmissions three or more times, and many Saturn customers have been left without transportation because they are unable to afford the costly transmission repairs or replacements needed to return their vehicles to operating condition.

6.     Often such customers have attempted to trade in their Saturn vehicles, only to be offered a trade-in amount by the Saturn dealership that was less than the cost of a Vti transmission repair/replacement and which was significantly less than the anticipated fair market value of the vehicle. This despite the fact that when the Vue was introduced in 2002, it had a minimum manufacturer's suggested retail price (MSRP) of more than $16,000.00.

7.     Although GM recently has publicly acknowledged an unusually high failure rate on vehicles with the Vti transmission, GM has failed or refused to remedy the problem. For customers with vehicles within the written warranty period, GM has done no more than to temporarily repair the Vti transmissions or to replace them with other similarly defective and inherently failure-prone Vti transmissions. GM has refused to take any action at all to remedy

-2-

this concealed defect for those customers with vehicles outside a voluntarily extended warranty period.  In no case has GM adequately remedied the defect for any member of the proposed Class by providing a vehicle not containing a defective Vti transmission.

8.    In short, GM is believed to have sold vehicles in which it knew the transmissions were likely to fail prematurely, and when such failure occurs, it renders the vehicles virtually worthless absent costly transmission repairs or replacement.

**JURISDICTION AND VENUE**

9.    Plaintiff Kelly Castillo is a resident of Meadow Vista (Placer County), California who purchased a 2003 Saturn Vue in Roseville (Placer County), California.

10.    GM is a Delaware corporation with its principal place of business in the State of Michigan.

11.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1132(d) because (a) it is a class action; (b) there are more than 100 class members; (c) the amount in controversy exceeds $5 million, exclusive of interest and costs; and (d) at least one member of the Class is a citizen of a State different from at least one Defendant.

12.    Personal jurisdiction over GM is proper because GM transacts substantial business within this State, has made contracts or promises substantially connected with this State, and has otherwise subjected itself to the general jurisdiction of this Court and the other courts in this State.

13.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district, such as the purchase by plaintiff Kelly Castillo and many other class members of their Saturn vehicles from GM in this district.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

14.    The Saturn Vti transmission is a "continuously variable" transmission (CVT). Unlike a conventional automatic transmission, which uses traditional gears to shift at a few fixed points, a CVT shifts through the use of a belt or chain that runs through pulleys that move closer together or farther apart.

-3-

15.     Rather than using a chain, which is more durable than a belt, the Saturn Vti utilizes a steel belt, known as a "thrust belt." Due to the inherently defective design of the Vti transmission, the thrust belt and the Vti transmission are extraordinarily prone to premature failure. For example, upon information and belief, the transmission is defectively designed in that the engine and/or the pump are underpowered to apply sufficient pressure on the thrust belt. As a result the thrust belt slips, and the resulting friction between the thrust belt and the pulleys causes the belt to wear until it prematurely fails.

16.     When the thrust belt and/or the transmission fails, either it causes hesitation in the movement or acceleration of the vehicle, leading to an unreasonably dangerous driving condition, or it renders the vehicle completely immobile. In either event, this failure requires costly repairs or transmission replacement. On information and belief, the average repair or replacement cost to the consumer exceeds five thousand dollars ($5,000.00).

17.     Upon information and belief, this design defect and the accompanying inherent risk of premature transmission failure could have been avoided by using a chain instead of a belt and/or by increasing the power to the transmission, perhaps among other remedies.

18.     The defectively designed/manufactured Vti transmissions at issue in this action are contained in 4-cylinder Saturn Vues and Saturn Ions in model years 2002-2004 and perhaps among other Saturn vehicle models.

19.     Upon information and belief, GM was aware when it introduced the Vti transmission that it was inherently prone to premature failure. For example, in 1999 or 2000, GM recognized that "concerns exist over the durability of the belt under continuous high-load operations."

20.     So concerned was GM over the quality and durability of the Vti transmission, and so plagued was the Vti with problems, that its initial launch was delayed by several months.

21.     Despite this delay in the launch of the Vti, upon information and belief, Saturn did not undertake adequate or customary quality control measures to ensure that the Vti was sufficiently tested and refined for full-scale production and sale to consumers. For example, upon information and belief, GM and/or its suppliers bypassed the production startup phase in which

-4-

small quantities of vehicles or components typically are tested and quality-controlled prior to initiation of full-scale production.

22.     GM did not inform the Class that GM had bypassed the "startup" phase of production, or that it had failed to undertake adequate or customary quality control measures concerning the Vti transmission.  Nor did GM inform regarding belt durability.

23.     In April of 2003, GM further recognized excessive durability problems with the Vti transmission when it authorized its retailers to perform full off-vehicle warranty repairs of the Vti.

24.     In early 2004, GM again recognized durability problems with the Vti transmission when it voluntarily extended the warranty on vehicles containing the Vti from 3 years / 36,000 miles to 5 years / 75,000 miles.  However, this temporary remedy was illusory because repairs under the voluntarily extended warranty failed to replace the defectively designed Vti transmission with a durable non-Vti transmission, and any replacement Vti transmissions carried the same defects and inherent elevated risk of premature failure.

25.     Transmissions are designed to, and ordinarily do, function for periods (and mileages) substantially in excess of those specified in GM's Saturn warranties, and given past experience, consumers legitimately expect to enjoy the use of an automobile without worry that the transmission would fail for significantly longer than the limited times and mileages identified in Saturn's express warranties, including the voluntarily extended warranty.

26.     Upon information and belief, GM, through (1) its own records of customers complaints, (2) dealership repair records, (3) records from the national Highway Traffic Safety Administration (NHTSA), and (4) other various sources, was well aware of the alarming failure rate of Vti transmissions but failed to notify customers of the nature and extent of the problems with the Vti transmission and failed to provide an adequate remedy.

27.     Members of the class could not have discovered the latent Vti transmission defects through any reasonable inspection of their vehicles prior to purchase.

28.     GM failed adequately to research, design, test and/or manufacture the Vti transmission before warranting, advertising, promoting, marketing, and selling it as suitable and

-5-

1  safe for use in an intended and/or reasonably foreseeable manner.

2      29.   GM advertised, promoted, marketed, warranted, and sold through the stream of

3  commerce to Plaintiffs and the Class vehicles containing Vti transmissions that GM knew or

4  reasonably should have know were dangerously defective, and which otherwise would not

5  perform in accordance with Plaintiff's and the Class members' reasonable expectations that the

6  vehicles would not suffer an inherent, dangerous, disabling defect, and that the vehicles would be

7  safe and suitable for their intended and reasonably foreseeable use.

8      30.   GM expressly warranted the affected vehicles to be free from defects in materials

9  or workmanship for a period of 36 months or 36,000 miles.

10      31.   Buyers, lessees, and other owners of the affected vehicles were without access to

11  the information concealed by GM as described herein, and therefor reasonably relied on GM's

12  representations and warranties regarding the quality, durability, and other material characteristics

13  of their vehicles.  Had these buyers and lessees known of the defect and the danger, they would

14  have taken steps to avoid that danger and/or would have paid less for their vehicles than the

15  amounts they actually paid, or would not have purchased the vehicles.

16      32.   By concealing the safety risk associated with the vehicles, GM has forced

17  consumers to bear the risk of injury to themselves and other persons, as well as to property, as a

18  result of the transmission failure, as well as the financial loss associated with the diminished

19  value of their vehicles.  Had GM revealed this information, consumers would not buy or lease, or

20  would pay substantially less for, vehicles equipped with the defective Vti transmissions.

21      33.   As a result of GM's misconduct, Plaintiffs and the Class have suffered actual

22  damages in that their Saturn vehicles are hazardous to drive, if operable at all, resulting in loss of

23  use, costly repairs, and substantially diminished value, including without limitation diminished

24  resale value.  Further, the defective Vti transmission is not a discreet, modular or incidental part

25  of the vehicle but, rather, is an essential part of the drive train and is integral to the safe operation

26  of the vehicle.

27      34.   The cost to repair or replace the defective Vti transmission is expected to be

28  between $4,000.00 and $8,000.00 per vehicle.  Because of the relatively small size of Plaintiff's

-6-

and the Class members' claims based on repair costs and/or loss of vehicle market value, and

because most have only modest resources as compared to GM, it is unlikely that individual Class

members could afford to seek recovery against GM. A class action is, therefore, the only

reasonable means by which Class members can obtain relief.

35.     GM's knowledge of the fact that the Vti transmission is inherently defective and

prone to sudden failure, and that it would need costly repairs and/or replacement, gave GM more

than adequate opportunity to cure the problem, which opportunity it failed to timely undertake.

Upon information and belief, GM was alerted to this problem by:

a)      GM's own testing and knowledge prior to the launch of the Vti
        transmission in 2002, including without limitation that which led to the
        delays in initial production;

b)      Excessive warranty claims relating to premature transmission failure;

c)      Reports of transmission failure to the National Highway Traffic Safety
        Administration (NHTSA);

d)      Additional complaints registered directly from consumers;

e)      Reports from GM's dealerships and authorized repair facilities regarding
        the nature and frequency of the premature transmission failure;

f)      Discussions in internet chat rooms, forums, and list serves sponsored by
        GM or, if not sponsored by GM, monitored by GM's employees; and

g)      Other sources.

## TOLLING OF STATUTES OF LIMITATION

36.     Any applicable statute of limitations has been tolled by GM's knowing and active

concealment and denial of the facts as alleged herein. Plaintiffs and the Class have been kept

ignorant of vital information essential to the pursuit of these claims, without any fault or lack of

diligence on their part. Plaintiffs and the Class could not earlier have reasonably discovered the

true, latent defective nature of the Vti transmission.

37.     GM was and is under a continuing duty to disclose to Plaintiffs and the Class the

true character, quality, and nature of the Vti transmission. Because of GM's knowing,

affirmative, and/or active concealment of the true character, quality and nature of the Vti

transmission problems with the vehicles at issue, GM is estopped from relying on any statutes of

-7-

1    limitation in defense of this action.

2                            **CLASS REPRESENTATIVE ALLEGATIONS**

3                                        **Kelly Castillo**

4        38.     Plaintiff Kelly Castillo purchased a new 2003 Saturn Vue with a Vti transmission

5    in January of 2007 from a Saturn dealership in Roseville, California for approximately

6    $23,000.00.

7        39.     Ms. Castillo had repeated problems with the vehicle during the voluntarily

8    extended 75,000 mile warranty period which appeared to be transmission-related, such as loss of

9    power to the vehicle.  The Saturn dealership in Roseville claimed to be unable to diagnose the

10   problems and did not repair or replace the transmission during the voluntarily extended warranty

11   period.

12       40.     However, when the vehicle reached approximately 80,000 miles (just outside the

13   warranty coverage) in June of 2007, the Saturn dealership in Roseville diagnosed a transmission

14   failure.  The dealership replaced the transmission at that time, at a cost of approximately

15   $4,200.00 to Ms. Castillo.

16                                       **Nichole Brown**

17       41.     Plaintiff Nichole Brown, a resident of the State of Georgia, purchased her 2003

18   Saturn Vue with a Vti transmission for about $12,888.00 in or about December of 2006, when it

19   had slightly over 75,000 miles.

20       42.     The Vti transmission failed in or about July of 2007, when the vehicle had

21   approximately 78,000 miles.  The Saturn dealership in Georgia quoted her a price of

22   approximately $6,000 to replace the transmission.

23       43.     Ms. Brown instead had the transmission replaced by an independent mechanic at a

24   cost of approximately $4,000.00.

25       44.     After the failure of the Vti transmission, Ms. Brown learned that the Vti

26   transmission in her vehicle had previously been repaired or replaced by a Saturn dealership in

27   October of 2006, meaning that the newly repaired or replaced transmission had only about 2

28   months of previous usage at the time she purchased it, and only a few thousand miles at the time

                                              -8-

of failure.

### Barbara Glisson

45.     Plaintiff Barbara Glisson, a resident of the State of Oklahoma, purchased a new 2003 Saturn Vue with a Vti transmission in September of 2003 from a Saturn dealership in Jacksonville, Florida for approximately $25,000, plus $1,495 for an "extended warranty service contract."

46.     The Vti transmission in Ms. Glisson's vehicle failed for the first time in February of 2005, when the vehicle had approximately 33,000 miles.  A Saturn dealership in Tulsa, Oklahoma replaced the transmission under warranty at that time.

47.     The Vti transmission failed a second time a little more than a year later, in March of 2006, when the vehicle had approximately 68,000 miles and the second transmission had only about 35,000 miles.  A Saturn dealership in Tulsa, Oklahoma overhauled the Vti transmission case, again under warranty.

48.     The vehicle now has approximately 107,000 miles and is experiencing its third transmission failure.  The Saturn dealership in Tulsa has once again diagnosed the vehicle as needing a transmission replacement, and the dealership quoted a price of more than $5,500.00 to do so.  Ms. Glisson has not yet had the vehicle repaired following the third transmission failure.

### CLASS ACTION ALLEGATIONS

49.     Plaintiffs brings this class action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure**.**  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements for maintaining this action under both state and federal law.

50.     The class of persons on whose behalf this action is brought is defined as follows (the "Class"):

> All persons in the States of Illinois, California, Florida, Georgia, Massachusetts, Michigan, Missouri, New Jersey, New York, North Carolina, Ohio, and Oklahoma who have owned a Saturn vehicle containing a Vti transmission which experienced a failure that GM failed or refused to fully remedy.

-9-

1  Excluded from the Class are: (1) members of the federal judiciary in the foregoing states, and (2)

2  GM, its employees, and any entity in which GM has a controlling interest, including officers and

3  directors and the members of their immediate families.  Also excluded from the Class are

4  individuals and entities with claims against GM for personal injuries as a result of the defect

5  alleged herein.

6      51.     The members of the Class, being geographically dispersed and numbering at least

7  in the tens of thousands, are so numerous that joinder of them in a single action is impracticable.

8  According to GM's website, GM sold approximately 75,000 Vues in 2002, 82,000 in 2003,

9  87,000 in 2004, and 92,000 in 2005.  GM sold approximately 6,000 Ions in 2002, 117,000 in

10  2003, 104,000 in 2004, and 101,000 in 2005.[1]  Even if only a small fraction of these vehicles

11  contained the Vti transmission, the Class would number in the tens of thousands.

12      52.     Plaintiffs can and will fairly and adequately represent and protect the interests of

13  the Class, as (a) the claims of Plaintiffs are substantially similar (if not identical to) those of

14  absent Class members, (b) there are questions of law or fact that are common to the Class and that

15  overwhelmingly predominate over any individual issues, such that by prevailing on his own

16  claims, Plaintiffs necessarily will establish Defendants' liability as to all Class members,

17  (c) without the Class representation provided by Plaintiff, virtually no Class members will receive

18  legal representation or redress for their injuries, (d) Class counsel have the necessary financial

19  resources to adequately and vigorously litigate this class action, and (e) Plaintiffs and Class

20  counsel are aware of their fiduciary responsibilities to the Class Members and are determined

21  diligently to discharge those duties by vigorously seeking the maximum possible recovery for the

22  Class.

23      53.     Numerous questions of law and fact that are common to all class members,

24  including, *inter alia*:

25          (a)     Whether Saturn vehicles containing the Vti transmission are defective in
               that: they fail to perform in accordance with the reasonable expectations of
26             ordinary consumers; they are not fit and safe for their ordinary, intended,
               and foreseeable use; their risks and dangers outweigh their benefits, if any;

27  _____

28  [1] http://www.gm.com/company/investor_information/sales_prod/hist_sales.html.

-10-

and/or they would not be offered for sale by a reasonably careful manufacturer or seller who knew of their defective nature;

(b)  Whether GM knew of the defective and unreasonably dangerous nature of vehicles equipped with the Vti transmission at the time those vehicles were sold;

(c)  Whether GM represented, through its advertising, warranties and other representations, that the Vti-equipped Saturn vehicles had characteristics that they did not actually have, or omitted to disclose material facts and actual characteristics regarding the Vti-equipped Saturn vehicles;

(d)  Whether GM made any affirmations of fact or promises relating to the Vti-equipped vehicles that became a basis of the bargain between seller and buyer, and thereby created an express warranty that the vehicles would conform to those affirmations or promises

(e)  Whether the Vti-equipped vehicles conform(ed) to GM's express warranties;

(f)  Whether the Vti-equipped vehicles are merchantable, pass without objection in the trade, and are fit for their ordinary and intended purposes;

(g)  Whether the Vti-equipped vehicles have the value represented by GM;

(h)  Whether Plaintiffs and the Class are entitled to compensatory damages; and

(i)  Whether GM's active concealment and failure to disclose the inherently defective nature of the Vti transmission constituted fraud or misrepresentation.

54.  These common questions of law or fact predominate over any questions or issues affecting individual Class members.

55.  A class action is an appropriate method for the fair and efficient adjudication of this controversy, given that:

(a)  Common questions of law and fact overwhelmingly predominate over any individual questions that may arise, such that there would be enormous economies to the Court and the parties in litigating the common issues on a classwide instead of a repetitive individual basis;

(b)  The size of each Class member's relatively small claim is too insignificant to make individual litigation an economically viable alternative, such that as a practical matter there is no "alternative" means of adjudication to a class action;

(c)  Few Class members have any interest in individually controlling the

-11-

1   prosecution of separate actions (and any who do may opt out);

2           (d)     Class treatment is required for optimal deterrence and compensation and

3   for limiting the court-awarded reasonable legal expenses incurred by Class members;

4           (e)     Despite the relatively small size of individual Class members' claims, their

5   aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a

6   common basis, will enable this class action to be litigated on a cost-effective basis, especially

7   when compared with repetitive individual litigation; and

8           (f)     No unusual difficulties are likely to be encountered in the management of

9   this class action insofar as GM's liability turns on substantial questions of law or fact that are

10  common to the Class and that predominate over any individual questions.

11                          **FIRST CAUSE OF ACTION**

12                          **STATUTORY CONSUMER FRAUD**
    **(On Behalf of Class Members Who Reside in or Purchased Affected Vehicles**
13  **in Any Class State, Excluding Commercial Entities in**
    **Florida, Michigan, Missouri, and Ohio)**
14

15  56.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs as if

16  fully set forth herein.

17  57.     This Cause of Action is brought on behalf of Class Members who reside in or

18  purchased affected vehicles in any Class State, excluding commercial entities in Florida,

19  Michigan, Missouri, and Ohio.

20  58.     At all relevant times there have been in effect substantially similar consumer

21  protection statutes in each of the Class States (the "Consumer Protection Statutes").  Each of the

22  Consumer Protection Statutes prohibits unfair or deceptive practices.[2]

23  _____

24  [2] The claims in this Cause of Action are brought on behalf of the Class Members under the Consumer Protection
    Statutes in their respective states.  Those statutes are: the California Consumers Legal Remedies Act ("CLRA"),
25  Cal.Civ.Code §§ 1750, *et seq.*, and the California Unfair Competition Law ("UCL"), Cal.Bus.& Prof.Code §§ 17200,
    *et seq.*; Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.* (Florida); Georgia Fair
26  Business Practices Act, Ga. Code Ann. § 10-1-390, *et seq.* (Georgia); Illinois Consumer Fraud Act, 815 ILCS 505/1,
    *et seq.* (Illinois); Mass Gen. L. ch. 93A, § 1, *et seq.* (Massachusetts); Mich. Stat. Ann § 445.901 *et seq.*, Mich. Stat.
27  Ann § 19.418(1) *et seq.* (Michigan); N.J. Rev. Stat. § 56:8-1, *et seq.*; N.J. Rev. Stat. § 56:8-2, *et seq.* (New Jersey);
    Mo. Rev. Stat. § 407.010, *et seq.* (Missouri); N.Y. Gen. Bus. Law. § 349 *et seq.* (New York); N.C. Gen. Stat. § 75-
28  1.1, *et seq.* (North Carolina); Ohio Rev. Code Ann. § 1345.01 *et seq.* (Ohio); and the Oklahoma Consumer Protection
    Act, Okla. Stat. Tit. 15, § 751, *et seq.* (Oklahoma).

                                    -12-

59.     Plaintiffs and members of the Class are "consumers," the Saturn vehicles at issue are "goods" or "merchandise," and the purchase of the Saturn vehicles at issue is a "consumer transaction" within the meaning of the Consumer Protection Statutes.

60.     The vehicles at issue in this action were defectively designed and/or manufactured, as further described above.

61.     As a result of the defective design and/or manufacture of the vehicles, the Vti transmission is inherently prone to premature failure.  When the Vti transmission fails, it renders the vehicle inoperable and necessitates very costly repairs, often exceeding the (diminished) value of the vehicle, and may create unreasonably hazardous driving conditions when the failure occurs while the vehicle is being driven.

62.     Upon information and belief, GM had exclusive knowledge of the defect at the time the vehicles were sold, as further described above.

63.     Despite GM's knowledge of the defect in the vehicles, GM failed or refused to disclose the existence of this defect (a material fact that GM was obliged to disclose) to Plaintiffs and members of the Class at the time they purchased their vehicles.

64.     GM intended, and continues to intend, that Plaintiffs and the Class rely on the omission of the material fact that the vehicles are defective.  This omission is contrary to representations, including partial representations, actually made by GM regarding the transmissions and vehicles at issue, as further described above.

65.     In failing to inform consumers of the defective Vti transmissions, by GM has engaged in an unfair, unconscionable, and deceptive act prohibited by the Consumer Protection Statutes.

66.     The omission of this material fact is the type of omission which is likely to and tends to mislead or deceive reasonable consumers acting reasonably under the circumstances.

67.     But for GM's deceptive and unfair act of concealing from Plaintiffs and the Class the existence of the defect in the vehicles, Plaintiffs and the Class members would not have purchased the vehicles.

68.     GM received written notice of its violations of the California Consumers Legal

-13-

Remedies Act (the "CLRA") on September 4, 2007, from Plaintiff Kelly Castillo on behalf of herself and all others similarly situated, satisfying the notice requirement of the CLRA and any similar requirement in the other Consumer Protection Statutes. (*See* the notice letter and certified mail receipt attached as Exhibits 1 and 2.)  GM has not responded to this notice, and any additional notice would be futile and unnecessary.

## SECOND CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTIES
**(On Behalf of Class Members Who Reside in or Purchased
Affected Vehicles in Any Class State Except California)**

69.   Plaintiffs incorporate by reference the allegations in all preceding paragraphs as if fully set forth herein.

70.   This Cause of Action is brought on behalf of Class Members who reside in or purchased affected vehicles in any Class State except California.

71.   GM expressly warranted the vehicles at issue to be free of defects in factory materials and workmanship at the time of sale and for a period of three years or 36,000 miles and, further, that GM would, at no cost, correct any vehicle defect related to materials or workmanship during the warranty period.  Such warranties are express warranties within the meaning of Section 2-313 of the Uniform Commercial Code (UCC) in each of the Class States at issue in this class action and are further governed by the Magnuson-Moss Warranty Act. 15 U.S.C. §§ 2301, *et seq.*[3]

72.   More specifically, GM's "New Car Limited Warranty" promises that GM "will provide for repairs to the vehicle" during the warranty period and that "[t]his warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring" during the warranty period.

73.   Through advertising and promotional literature, GM boasted that the Vti

---

[3]  The pertinent UCC sections in the states at issue are: Fla. Stat. § 672.313 (West 2007) (Florida); Ga. Code Ann. § 11-2-313 (2007) (Georgia); 810 ILCS 5/2-313 (2007) (Illinois); Mass. Gen. Laws Ann. ch. 106 § 2-313 (2007) (Massachusetts); Mich. Comp. Laws Ann. § 440.2313 (2007) (Michigan); Mo. Rev. Stat. § 400.2-313 (2007) (Missouri); N.J. Stat. Ann. § 12A:2-313 (2007) (New Jersey); N.Y. U.C.C. Law § 2-313 (McKinney 2007) (New York); N.C. Gen. Stat. § 25-2-313 (2007) (North Carolina); Ohio Rev. Code Ann. § 1302.26 (West 2007) (Ohio); Okla. Stat. Ann. tit. 12 § 2-313 (2007) (Oklahoma).

transmission represented an "evolutionary step in automatic transmission technology" and touted the Vti's "robust design," "excellent performance," and "unobtrusive operation." GM's promotional literature highlighted that the Vti's "torque converter clutch is constructed of carbon fiber *for durability*" (emphasis added). GM represented that the Vti-equipped Saturn Vue was "tough, versatile [and] at home in almost any environment" and that that the Vti-equipped Ion was "specifically designed and engineered for whatever's next."

74. It is anticipated that Plaintiffs will obtain through discovery additional examples in GM's possession of advertising statements touting the durability of the Vti transmission.

75. GM's representations in its advertising, promotional material, and warranty information became a basis of the bargain between GM and the Plaintiff Class.

76. Upon information and belief, none of GM's advertising or promotional literature disclosed the Vti's design or manufacturing defects, GM's failure to utilize adequate or customary quality control measures, the inherent unreliability of the Vti, or the elevated and unreasonable risk of a transmission failure that would render the vehicle dangerous and/or inoperable.

77. At the time of sale and forward, GM has breached these express warranties by selling to Plaintiffs and the Class vehicles equipped with defective Vti transmissions that are, by design, unsafe, subject to extreme premature wearing and failure, and likely to cause serious injury to Plaintiffs and Class members – if their vehicles are even operable – and/or by refusing to adequately repair or replace their transmissions.

78. As a direct and proximate cause of GM's breach of express warranties, Plaintiffs and the Class have suffered actual damages and are threatened with irreparable harm by virtue of an elevated and unreasonable risk of serious bodily injury.

79. Any limitation on the duration of GM's express warranties is unconscionable within the meaning of Section 2-302 of the UCC, and therefore is unenforceable in that, among other things, vehicles with Vti transmissions contain a latent defect of which GM was actually or constructively aware at the time of sale, and purchasers lacked a meaningful choice with respect to the terms of the warranty due to unequal bargaining power and a lack of warranty competition.

-15-

80.    Any attempt by GM to repair a defective Vti transmission or to replace one defectively designed Vti transmission with another defectively designed Vti transmission within the warranty period could not satisfy GM's obligation to correct defects under the warranty.  The design defect in the Vti transmission -- which unreasonably elevates the risk of premature failure, immobility and/or dangerous loss of operability of the vehicle – cannot be remedied through the continued use of a defective Vti transmission.

81.    Any otherwise applicable notice requirement was met by the filing of this action, and because GM had notice of the defect in Vti-equipped vehicles long before Plaintiffs and the Class but did nothing to adequately remedy the defect.

## THIRD CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
**(On Behalf of Class Members Who Reside in or Purchased
Affected Vehicles in Any Class State Except California)**

82.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs as if fully set forth herein.

83.    This Cause of Action is brought on behalf of Class Members who reside in or purchased affected vehicles in any Class State except California.

84.    Section 2-314 of the Uniform Commercial Code and the Magnuson-Moss Warranty Act govern the implied warranty of merchantability in all of the states at issue in this class action.  *See, e.g.*, 810 ILCS 5/2-314 and 15 U.S.C. §§ 2301, *et seq.*[4]

85.    As a seller and manufacturer of vehicles, GM is a "merchant" within the meaning of the UCC.

86.    The vehicles at issue in this action are "goods" as defined in the UCC.

87.    Implied in the sale of the vehicles is a warranty of merchantability that requires, among other things, that the vehicles pass without objection in the trade and are fit for the

---

[4] The pertinent UCC sections in the states at issue are: Fla. Stat. § 672.314 (West 2007) (Florida); Ga. Code Ann. § 11-2-314 (2007) (Georgia); 810 ILCS 5/2-314 (2007) (Illinois); Mass. Gen. Laws Ann. ch. 106 § 2-314 (2007) (Massachusetts); Mich. Comp. Laws Ann. § 440.2314 (2007) (Michigan); Mo. Rev. Stat. § 400.2-314 (2007) (Missouri); N.J. Stat. Ann. § 12A:2-314 (2007) (New Jersey); N.Y. U.C.C. Law § 2-314 (McKinney 2007) (New York); N.C. Gen. Stat. § 25-2-314 (2007) (North Carolina); Ohio Rev. Code Ann. § 1302.27 (West 2007) (Ohio); Okla. Stat. Ann. tit. 12 §2-314 (2007) (Oklahoma).

-16-

1  ordinary purposes for which the vehicles are used.

2      88.     Because the vehicles are defective, as a result of being equipped with a defective

3  Vti transmission as further described above, the vehicles are not able to function in their ordinary

4  capacities and were therefore not merchantable at the times they were sold, as impliedly

5  warranted by GM.

6      89.     GM was put on notice of the defect by the numerous complaints that GM received

7  concerning the defect, by its own prior knowledge, and by the filing of this action.

8      90.     Any purported limitation on remedies on the part of GM causes the warranty to

9  fail of its essential purpose and is unconscionable under the circumstances.

10     91.     The defect in the vehicles renders them not merchantable and thereby proximately

11  caused Plaintiffs and the Class members who purchased them to suffer damages in an amount to

12  be ascertained at trial.

13                              **FOURTH CAUSE OF ACTION**

14                                      **UNJUST ENRICHMENT**
                     **(On Behalf of Class Members Who Reside in or Purchased**
15                          **Affected Vehicles in Any Class State)**

16     92.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs as if

17  fully set forth herein.

18     93.     This Cause of Action is brought on behalf of Class Members who reside in or

19  purchased affected vehicles in any Class State except California.

20     94.     This Cause of Action is brought against GM pursuant to the common law doctrine

21  of unjust enrichment.

22     95.     The vehicles that GM manufactured and sold containing the Vti transmission are

23  defective because the Vti transmission is defectively designed and or manufactured, as further

24  described above.

25     96.     Upon information and belief, GM had knowledge of the defect in the vehicles at

26  the time of sale, as further described above.

27     97.     Despite GM's knowledge of the defect in these vehicles, GM failed to disclose the

28  existence of this defect (a material fact) to Plaintiffs and the Class when they purchased their

                                        -17-

1    6.    For such other and further relief as this Court may deem just and proper.

2    Dated: October 10, 2007          Respectfully submitted,

3
                                      KERSHAW, CUTTER & RATINOFF, LLP
4

5                                     By _____
6                                         C. BROOKS CUTTER
                                          KERSHAW, CUTTER & RATINOFF
7                                         980 9th Street, 19th Floor
                                          Sacramento, California 95814
8                                         Telephone:  (916) 448-9800
                                          Facsimile:  (916) 669-4499
9

10                                        MARK L. BROWN
                                          THE LAKIN LAW FIRM
11                                        300 Evans Avenue
                                          P.O. Box 229
12                                        Wood River, IL  62095
                                          Telephone:  (618) 254-1127
13                                        Facsimile:  (618) 254-0193

14
                                          Attorneys for Plaintiffs
15

16   ///

17   ///

18   ///

19   ///

20
     ///
21
     ///
22
     ///
23
     ///
24
     ///
25
     ///
26
     ///
27
     ///
28

-19-

1

2

### **DEMAND FOR JURY TRIAL**

3

Plaintiffs demand a trial by jury on all issues triable as of right by a jury.

4

5

Dated:  October 10, 2007                          Respectfully submitted,

6

KERSHAW, CUTTER & RATINOFF, LLP

7

8

By _____

9

C. BROOKS CUTTER

10

KERSHAW, CUTTER & RATINOFF
980 9th Street, 19th Floor

11

Sacramento, California 95814
Telephone:  (916) 448-9800

12

Facsimile:  (916) 669-4499

13

MARK L. BROWN

14

THE LAKIN LAW FIRM
300 Evans Avenue

15

P.O. Box 229
Wood River, IL  62095

16

Telephone:  (618) 254-1127
Facsimile:  (618) 254-0193

17

18

Attorneys for Plaintiff

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT