UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

KELLY CASTILLO, NICHOLE BROWN,
BRENDA ALEXIS DIGIANDOMENICO,
VALERIE EVANS, BARBARA ALLEN,
STANLEY OZAROWSKI, and DONNA
SANTI, individually and on
behalf of others similarly
situated,

                                    NO. CIV. 07-2142 WBS GGH

         Plaintiffs,

    v.                              MEMORANDUM AND ORDER RE:
                                    MOTION TO AMEND AND MOTION FOR
                                    PRELIMINARY APPROVAL
                                    OF CLASS ACTION SETTLEMENT

GENERAL MOTORS CORPORATION,

         Defendant.
_____/

                          ----oo0oo----

         Plaintiffs Kelly Castillo, Nichole Brown, Brenda Alexis

Digiandomenico, Valerie Evans, Barbara Allen, Stanley Ozarowski,

and Donna Santi brought this matter seeking a class action

lawsuit against defendant General Motors Corporation.  Plaintiffs

allege that defendant concealed design and manufacturing defects

regarding the transmission installed in certain models of

defendant's 2002 through 2005 line of Saturn vehicles.  Presently

                                1

before the court is the parties' joint motion for preliminary
approval of the class action settlement.

I.   Factual and Procedural Background

         Between 2002 and 2005, defendant manufactured, sold,
and distributed 4-cylinder Saturn Vues and Saturn Ions ("Saturn
vehicles") containing the Saturn Vti transmission.  (Proposed
Second Am. Compl. ("SAC") ¶ 18.)[1]  "Unlike a conventional
automatic transmission, which uses traditional gears to shift at
a few fixed points," the Vti transmission is a "continuously
variable" transmission that utilizes a belt and pulley system to
shift between gears.  (Id. at ¶¶ 14, 15.)  The alleged defective
design of the belt and pulley system purportedly makes the Vti

---

[1]     In addition to their motion for preliminary approval of
class action settlement, plaintiffs--with the consent of
defendant--also move to file their SAC in light of the court's
pending approval of settlement.  On December 19, 2007, this court
issued a Status (Pretrial Scheduling) Order that explicitly
prohibited further amendments to the pleadings without leave of
the court pursuant to Federal Rule of Civil Procedure 16(b).
(Feb. 19, 2008 Status (Pretrial Scheduling) Order 2:2-5); see
also Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08
(9th Cir. 1992) ("Once the district court ha[s] filed a pretrial
scheduling order pursuant to Federal Rule of Civil Procedure
16[,] which establishe[s] a timetable for amending pleadings[,]
that rule's standards control[].").
         Under Rule 16(b), a party seeking leave to amend must
demonstrate "good cause."  Fed. R. Civ. P. 16(b).  "Rule 16(b)'s
'good cause' standard primarily considers the diligence of the
party seeking the amendment."  Johnson, 975 F.2d at 609; see also
id. ("If [the moving] party is not diligent, the inquiry should
end.").  Here, plaintiffs demonstrate the requisite diligence in
satisfaction of Rule 16(b) insofar as they filed their motion
immediately after reaching the settlement agreement and "in large
part to conform the pleadings to the facts as revealed in
subsequent discovery and investigation, along with the proposed
settlement."  (Pls.' Mem. in Supp. of Mot. to Amend 2:22-23);
see also Jackson v. Laureate, Inc., 186 F.R.D. 605, 608 (E.D.
Cal. 1999) (noting that "good cause" exists where the moving
party shows that he or she was diligent in seeking an amendment
once the need became apparent).  Accordingly, the court will
grant plaintiffs' motion for leave to file their SAC, a proposal
of which is now in possession of the court.

1  transmission exceptionally prone to premature failure.  (Id. at ¶
2  15.)

3         On October 10, 2007, three of the named plaintiffs--all
4  owners of a Saturn vehicle with Vti transmission--filed a
5  putative Class Action Complaint alleging (1) state statutory
6  consumer fraud, (2) breach of express warranties, (3) breach of
7  implied warranty of merchantability,[2] and (4) unjust enrichment.

8         After plaintiffs amended their initial Complaint as a
9  matter of course on January 14, 2008, Fed. R. Civ. P. 15(a)(1),
10 defendant filed a motion to dismiss plaintiffs' First Amended
11 Complaint on February 4, 2008.  (Docket Nos. 20, 27-29.)  Before
12 the court could hear this motion, however, the parties engaged in
13 settlement discussions and early mediation that resulted in an
14 agreement on the settlement terms.  (Docket No. 48.)  As a
15 result, the parties now seek preliminary approval of their
16 Stipulation of Settlement.

17 II.  Discussion

18        The Ninth Circuit has declared that a strong judicial
19 policy favors settlement of class actions.  Class Plaintiffs v.
20 City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).
21 Nevertheless, where, as here, "parties reach a settlement
22 agreement prior to class certification, courts must peruse the
23 proposed compromise to ratify both [1] the propriety of the
24 certification and [2] the fairness of the settlement."  Staton v.
25 Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

26

27        [2]   On February 29, 2008, the parties stipulated to a
   voluntary dismissal of Count III.  (Notice of Stipulation of
28 Voluntary Dismissal of Count III 1:25-28.)

1    In conducting the first part of its inquiry, the court
2  "must pay 'undiluted, even heightened, attention' to class
3  certification requirements" because, unlike in a fully litigated
4  class action suit, the court will not have future opportunities
5  "to adjust the class, informed by the proceedings as they
6  unfold." Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 620
7  (1997); accord Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th
8  Cir. 1998).  The parties cannot "agree to certify a class that
9  clearly leaves any one requirement unfulfilled," and consequently
10  the court cannot blindly rely on the fact that the parties have
11  stipulated that a class exists for purposes of settlement.  Berry
12  v. Baca, No. 01-02069, 2005 WL 1030248, at *7 (C.D. Cal. May 2,
13  2005); see also Amchem, 521 U.S. at 622 (observing that nowhere
14  does Rule 23 say that certification is proper simply because the
15  settlement appears fair).  In conducting the second part of its
16  inquiry, the "court must carefully consider 'whether a proposed
17  settlement is fundamentally fair, adequate, and reasonable,'
18  recognizing that '[i]t is the settlement taken as a whole, rather
19  than the individual component parts, that must be examined for
20  overall fairness . . . .'" Staton, 327 F.3d at 952 (quoting
21  Hanlon, 150 F.3d at 1026); see also Fed. R. Civ. P. 23(e)
22  (outlining class action settlement procedures).

23    Procedurally, the approval of a class action settlement
24  takes place in two stages.  "In the first stage of the approval
25  process, 'the court preliminarily approve[s] the Settlement
26  pending a fairness hearing, temporarily certifie[s] the Class . .
27  . , and authorize[s] notice to be given to the Class.'" Alberto
28  v. GMRI, Inc., No. 07-1895, 2008 WL 2561106, at *2 (E.D. Cal.

4

June 24, 2008) (citation omitted).   In this Order, therefore, the court will only "determine[] whether a proposed class action settlement deserves preliminary approval" and lay the ground work for a future fairness hearing.   Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004).   At the fairness hearing, after notice is given to putative class members, the court will entertain any of their objections to (1) the treatment of this litigation as a class action and/or (2) the terms of the settlement.   See Diaz v. Trust Territory of Pac. Islands, 876 F.2d 1401, 1408 (9th Cir. 1989) (holding that prior to approving the dismissal or compromise of claims containing class allegations, district courts must, pursuant to Rule 23(e), hold a hearing to "inquire into the terms and circumstances of any dismissal or compromise to ensure that it is not collusive or prejudicial").[3]   Following the fairness hearing, the court will make a final determination as to whether the parties should be allowed to settle the class action pursuant to the terms agreed upon.   DIRECTV, Inc., 221 F.R.D. at 525.

A.   Certification of the Class

A class action will only be certified if it meets the four prerequisites identified in Federal Rule of Civil Procedure 23(a) and additionally fits within one of the three subdivisions of Federal Rule of Civil Procedure 23(b).   Although a district court has discretion in determining whether the moving party has

---

[3]   As noted by this court in a previous Order, Diaz's assumption that a court could approve settlement without certifying a class appears to have been overruled by the United States Supreme Court in Amchem.   Alberto, 2008 WL 2561106, at *2 n.2.

satisfied each Rule 23 requirement, <u>Califano v. Yamasaki</u>, 442 U.S. 682, 701 (1979); <u>Montgomery v. Rumsfeld</u>, 572 F.2d 250, 255 (9th Cir. 1978), the court must conduct a rigorous inquiry before certifying a class.  <u>Gen. Tel. Co. of the Sw. v. Falcon</u>, 457 U.S. 147, 161 (1982); <u>E. Tex. Motor Freight Sys. v. Rodriguez</u>, 431 U.S. 395, 403-05 (1977).

        1.   <u>Rule 23(a)</u>

        Rule 23(a) restricts class actions to cases where

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These requirements are more commonly referred to as numerosity, commonality, typicality, and adequacy of representation, respectively.  <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998).

        a.   <u>Numerosity</u>

        While courts have not established a precise threshold for determining numerosity, <u>Gen. Tel. Co. v. E.E.O.C.</u>, 446 U.S. 318, 330 (1980), a class consisting of one thousand members "clearly satisfies the numerosity requirement." <u>Sullivan v. Chase Inv. Servs., Inc.</u>, 79 F.R.D. 246, 257 (N.D. Cal. 1978). The SAC significantly increases the Settlement Class size, expanding the scope from putative members in only thirteen states to putative members in all fifty states.[4]  (SAC ¶ 53.)

---

    [4]   The parties' Stipulation of Settlement defines the Settlement Class as "all persons who are residents of the United States and who as of the date of entry of the Preliminary

Plaintiffs maintain that defendant sold over 90,000 Saturn

vehicles outfitted with Vti transmissions, suggesting that the

actual class size could easily number in the tens of thousands.[5]

(Id. at ¶ 64.)  Plaintiffs thus assert that this, in addition to

the geographical dispersion of putative members, makes joinder of

all class members in a single action impracticable.  (Id.)

When, as here, plaintiffs have not provided the court

with any official documents or explicit calculations in support

of their estimation regarding numerosity,[6] a court may rely on

common sense assumptions to support findings of numerosity.

Manual for Complex Litigation (Fourth) § 23.22(3) (2008); see

Sherman v. Griepentrog, 775 F. Supp. 1383, 1389 (D. Nev. 1991)

(finding that a court may draw reasonable inferences of class

---

Approval Order . . . own or have owned a" "2002 through 2005
model year Saturn Vue equipped with Vti transmission [or a] 2003
through 2004 model year Saturn ION equipped with Vti
transmission."  (Stipulation of Settlement 4:24-26, 5:4-6.)  The
Stipulation of Settlement specifically excludes "(i) any person,
firm, trust, corporation, or other entity that purchased Class
Vehicles from [defendant]," "or any entity related or affiliated
with [defendant], for resale or fleet purposes (including without
limitation any authorized Saturn Retailer) and (ii) any person
who has instituted an action for damages for property damage or
personal injury against [defendant] in connection with a Vti
transmission."  (Id. at 4:27-5:3.)

[5]    In their memorandum plaintiffs' counsel asserts that it
was contacted by more than 250 Saturn owners who reported similar
failures relating to their Vti transmission.  (Pls.' Mem. in
Supp. of Mot. for Preliminary Approval of Class Action Settlement
3:23-25.)  At oral argument, plaintiffs' counsel indicated that
the total had reached about 350.

[6]    Asserting that the bulk of discovery conducted involved
confidential documents and/or testimony subject to a Protective
Order, plaintiffs have eschewed filing any actual products of
discovery; instead, they only provide the court with a sealed
"addendum" that generally repeats the above information related
to numerosity.  (Docket No. 51.)

7

1  size from facts before it); cf. Blackie v. Barrack, 524 F.2d 891,

2  901 (9th Cir. 1975) (satisfying burden of Rule 23(a) requirements

3  can be met by providing court with sufficient basis for forming a

4  "reasonable judgment" on each requirement).   Even if plaintiffs

5  have significantly overestimated the class size, it is reasonable

6  to assume that the actual size will surpass previous Ninth

7  Circuit thresholds.   See, e.g., Gay v. Waiter's & Dairy

8  Lunchmen's Union, 549 F.2d 1330 (9th Cir. 1997) (finding

9  numerosity requirement to be met with approximately 110 potential

10 class members); Leyva v. Buley, 125 F.R.D. 512, 515 (E.D. Wash.

11 1989) (allowing certification of a fifty-member class).

12                    b.   Commonality

13      Rule 23(a) also requires that "questions of law or fact

14 [be] common to the class."  Fed. R. Civ. P. 23(a)(2).  Because

15 "[t]he Ninth Circuit construes commonality liberally," "it is not

16 necessary that all questions of law and fact be common."  West,

17 2006 WL 1652598, at *3 (citing Hanlon, 150 F.3d at 1019).  "The

18 existence of shared legal issues with divergent factual

19 predicates is sufficient, as is a common core of salient facts

20 coupled with disparate legal remedies within the class."  Hanlon,

21 150 F.3d at 1019.

22      Plaintiffs identify several questions of law and fact

23 that would have been common to all class members had their

24 respective cases gone to trial, including whether: (1) Saturn

25 vehicles containing the Vti transmission are defective; (2)

26 defendant knew of the defect and its potentially dangerous

27 nature; (3) defendant misrepresented the characteristics of Vti-

28 equipped Saturn vehicles; (4) defendant made promises regarding

8

1  the Vti transmissions that created an express warranty between

2  buyer and seller; (5) the Vti-equipped vehicles conformed to

3  defendant's express warranties; (6) the Vti-equipped vehicles are

4  merchantable; (7) the Vti-equipped vehicles have the value

5  represented by defendant; (8) defendant's active concealment of

6  the Vti transmission's defective nature constituted fraud or

7  misrepresentation; and (9) plaintiffs entitlement, if any, to

8  compensatory damages.  (SAC ¶ 66.)

9         The court agrees that the potential claims of putative

10  class members would arise from a common set of legal and factual

11  conditions similar to that of named plaintiffs.  See Dukes

12  v.Wal-Mart, Inc., 509 F.3d 1168, 1177-78 (9th Cir. 2007) (stating

13  that the standard in Rule 23(a)(2) is "qualitative rather than

14  quantitative--one significant issue common to the class may be

15  sufficient to warrant certification").  Because it therefore

16  appears that the same alleged conduct of defendant would "form[]

17  the basis of each of the plaintiff's claims," Acosta v. Equifax

18  Info. Servs., L.L.C., 243 F.R.D. 377, 384 (C.D. Cal. 2007), class

19  relief based on commonality is appropriate.  See Califano v.

20  Yamasaki, 442 U.S. 682, 701 (1979) (holding that commonality

21  issues of the class "turn on questions of law applicable in the

22  same manner to each member of the class").

23                    c.   Typicality

24         Rule 23(a) further requires that the "claims or

25  defenses of the representative parties [be] typical of the claims

26  or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality

27  requires that named plaintiffs have claims "reasonably

28  coextensive with those of absent class members," but their claims

do not have to be "substantially identical." <u>Hanlon</u>, 150 F.3d at
1020.  The test for typicality "'is whether other members have
the same or similar injury, whether the action is based on
conduct which is not unique to the named plaintiffs, and whether
other class members have been injured by the same course of
conduct.'"  <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th
Cir. 1992) (citation omitted).

  The initial circumstances underlying the named
plaintiffs' claims are substantively identical to the class
members' claims because the named plaintiffs and class members
all purchased Saturn vehicles with Vti transmissions.  Even
amongst themselves, however, disparity exists between the damages
the named plaintiffs allege.  Similar to the differences in
damages the named plaintiffs seek, their damages also vary from
the class members' damages because not all class members
experienced problems with their transmissions and, of the class
members who did, not all incurred the same amount of damages.
Nonetheless, the source of the named plaintiffs' claims is
typical of the source of the class members' claims and the
settlement's provision for an individualized determination of
damages cures the lack of typicality with respect to damages.
<u>See</u> <u>Dukes v. Wal-Mart, Inc.</u>, 509 F.3d 1168, 1185 (9th Cir. 2007)
("Some degree of individuality is to be expected in all cases,
but that specificity does not necessarily defeat typicality.").

      d. <u>Adequacy of Representation</u>

  Finally, Rule 23(a) requires "representative parties
[who] will fairly and adequately protect the interests of the
class."  Fed. R. Civ. P. 23(a)(4).  To resolve the question of

10

1  legal adequacy, the court must answer two questions: (1) do the
2  named plaintiffs and their counsel have any conflicts of interest
3  with other class members and (2) have the named plaintiffs and
4  their counsel vigorously prosecuted the action on behalf of the
5  class?  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir.
6  1998).  This adequacy inquiry considers a number of factors,
7  including "the qualifications of counsel for the representatives,
8  an absence of antagonism, a sharing of interests between
9  representatives and absentees, and the unlikelihood that the suit
10 is collusive."  Brown v. Ticor Title Ins., 982 F.2d 386, 390 (9th
11 Cir. 1992).

12         The examination of potential conflicts of interest in
13 settlement agreements "has long been an important prerequisite to
14 class certification.  That inquiry is especially critical when []
15 a class settlement is tendered along with a motion for class
16 certification."  Hanlon, 150 F.3d at 1020.  Here, the interests
17 of plaintiffs and their course of legal redress are not
18 ostensibly at variance with those of putative class members.
19 Although the definition of the settlement class encompasses a
20 large number of members, the class itself is narrowly defined:
21 all United States residents who, as of the date of entry of this
22 Order, own or have owned a 2002 through 2005 model year Saturn
23 Vue equipped with Vti transmission or a 2003 through 2004 model
24 year Saturn ION equipped with Vti transmission.  This definition
25 effectively minimizes the probability that the certification
26 procedure will overlook legitimate yet dissimilar claims of class
27 members; rather, "the potential for conflicting interests will
28 remain low while the likelihood of shared interests remains

11

1  high."  <u>Alberto v. GMRI, Inc.</u>, No. 07-1895, 2008 WL 2561106, at
2  *5 (E.D. Cal. June 24, 2008).

3       The second prong of the adequacy inquiry examines the
4  vigor with which named plaintiffs and their counsel have pursued
5  the common claims.  "Although there are no fixed standards by
6  which 'vigor' can be assayed, considerations include competency
7  of counsel and, in the context of a settlement-only class, an
8  assessment of the rationale for not pursuing further litigation."
9  <u>Hanlon</u>, 150 F.3d at 1021.  Based on its representations,
10  plaintiffs' counsel appears to have approached this action with
11  the requisite competency, as it purportedly conducted pre-
12  litigation investigation, consulted with putative class members
13  and industry experts, and negotiated the settlement's mileage and
14  duration limitations.  (Pls.' Mem. in Supp. of Mot. for
15  Preliminary Approval of Class Action Settlement 3:13-18.)

16       Probing plaintiffs and their counsel's rationale for
17  not pursuing further litigation, however, is inherently more
18  complex.  "District courts must be skeptical of some settlement
19  agreements put before them because they are presented with a
20  'bargain proffered for . . . approval without the benefit of an
21  adversarial investigation.'"  <u>Hanlon</u>, 150 F.3d at 1022 (quoting
22  <u>Amchem</u>, 521 U.S. at 620).  This logic is certainly applicable
23  here, because little documentation has been offered to confirm
24  that the settlement terms are adequate.  The fact that the
25  parties reached an agreement before an experienced mediator,
26  while commendable, does not preclude a detailed review of the
27  settlement terms.  Settlement adequacy should be scrutinized when
28  there is evidence of fee-driven settlements, exorbitant service

1   payments, or collusion between the parties.  <u>Hanlon</u>, 150 F.3d at

2   1022.  An examination of such concerns is addressed below in the

3   preliminary fairness assessment.  <u>See</u> <u>infra</u>, Section II(B)(2).

4        The court reiterates the need for documentation

5   illuminating plaintiffs' decision not to proceed with the

6   litigation.  Nonetheless, pending the introduction at the final

7   fairness hearing of further evidence in support of counsel's

8   findings, plaintiffs' proffered "adequacy of representation"

9   showing preliminarily demonstrates that plaintiffs can

10  sufficiently represent the class.

11       2.  <u>Rule 23(b)</u>

12       An action that meets all the prerequisites of Rule

13  23(a) may be maintained as a class action only if it also meets

14  the requirements of one of the three subdivisions of Rule 23(b).

15  <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 163 (1974).  In this

16  case, plaintiffs seek certification under Rule 23(b)(3), "which

17  is appropriate 'whenever the actual interests of the parties can

18  be served best by settling their differences in a single

19  action.'"  <u>Hanlon</u>, 150 F.3d at 1022 (citation omitted).  A class

20  action may be maintained under Rule 23(b)(3) if (1) "the court

21  finds that questions of law or fact common to class members

22  predominate over any questions affecting only individual members"

23  and (2) "that a class action is superior to other available

24  methods for fairly and efficiently adjudicating the controversy."

25  Fed. R. Civ. P. 23(b)(3).

26       a.  <u>Predominance</u>

27       Because Rule 23(a)(3) already considers commonality,

28  the focus of the Rule 23(b)(3) predominance inquiry is on the

balance between individual and common issues.  <u>Hanlon</u>, 150 F.3d
at 1022; <u>see also</u> <u>Amchem</u>, 521 U.S. at 623 ("The Rule 23(b)(3)
predominance inquiry tests whether proposed classes are
sufficiently cohesive to warrant adjudication by
representation.").  The parties' Stipulation of Settlement
sufficiently demonstrates that "[a] common nucleus of facts and
potential legal remedies dominates this litigation."  <u>Hanlon</u>, 150
F.3d at 1022.  Where the aforementioned common questions "present
a significant aspect of the case and . . . can be resolved for
all members of the class in a single adjudication, there is clear
justification for handling the dispute on a representative rather
than on an individual basis."  <u>Hanlon</u>, 150 F.3d at 1022.

          The existence of the individualized assessment of
damages in this action does not preclude a finding of
predominance.  <u>See, e.g.</u>, <u>West v. Circle K Stores, Inc.</u>, No.
04-0438, 2006 WL 1652598, at *7-8 (E.D. Cal. June 13, 2006)
("[I]ndividual issues regarding damages will not, by themselves,
defeat certification under Rule 23(b)(3)." (citing <u>Blackie v.</u>
<u>Barrack</u>, 524 F.2d 891, 905-09 (9th Cir. 1975))); <u>see also</u> <u>Alberto</u>
<u>v. GMRI, Inc.</u>, No. 07-1895, 2008 WL 2561106, at *7 (E.D. Cal.
June 24, 2008) ("[P]redominance inquiry satisfied despite the
fact that 'individual differences in accrual caps, accrual rates,
and amount of vacation time accrued' would result in
individualized damages.") (citation omitted).

               b.  <u>Superiority</u>

          In addition to the predominance requirement, Rule
23(b)(3) provides a non-exhaustive list of matters pertinent to
the court's determination that the class action device is

superior to other methods of adjudication.  Fed. R. Civ. P.

23(b)(3)(A)-(D).  The factors relevant to this case include "the

interest of members of the class in individually controlling the

prosecution or defense of separate actions" and "the extent and

nature of any litigation concerning the controversy already

commenced by or against members of the class."  Id.; Amchem, 521

U.S. at 620.  At this time, the court is unaware of any

concurrent litigation and does not have reason to believe that

other individuals have an interest in controlling this action,

thus the class action device appears to be the superior method

for adjudicating this controversy.

B.   Rule 23(e): Fairness, Adequacy, and Reasonableness of
     Proposed Settlement

Having determined that class treatment appears to be

warranted,[7] the court must now address whether the terms of the

parties' Settlement Agreement appear fair, adequate, and

---

[7]   The court notes that it has conducted an analysis of
the class certification question at this stage to determine if
all of the effort that will necessarily go into preparing for the
fairness hearing is appropriate.  This initial determination that
class certification is warranted is not binding on the court, and
the parties are discouraged from changing their positions on the
terms of the settlement in reliance on this Order.  The court is
not required to make a final determination that class treatment
is appropriate until the final settlement approval, and it
therefore does not herein make that final determination.  See In
re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,
55 F.3d 768, 797 (3d Cir. 1995) (holding that while the
trustworthiness of the negotiation process used to approve the
settlement can be relied on to justify provisional certification
of a settlement class, "final settlement approval depends on the
finding that the class met all the requisites of Rule 23").
Moreover, because the analysis of the Rule 23(b) requirements
depends in part on the terms of the settlement and the
superiority component, the parties cannot assume that the court's
instant class certification analysis would necessarily be the
same should circumstances change.

reasonable.   In conducting this analysis, the court must balance

several factors including

> the strength of the plaintiffs' case; the risk, expense,
> complexity, and likely duration of further litigation;
> the risk of maintaining class action status throughout
> the trial; the amount offered in settlement; the extent
> of discovery completed and the stage of the proceedings;
> the experience and views of counsel; the presence of a
> governmental participant; and the reaction of the class
> members to the proposed settlement.

Hanlon, 150 F.3d at 1026.  But see Molski v. Gleich, 318 F.3d

937, 953-54 (9th Cir. 2003) (noting that a district court need

only consider the facts designed to protect absentees).  "Given

that some of these factors cannot be fully assessed until the

court conducts its fairness hearing, 'a full fairness analysis is

unnecessary at this stage.'"  Alberto v. GMRI, Inc., No. 07-1895,

2008 WL 2561106, at *8 (E.D. Cal. June 24, 2008) (citation

omitted).  At this stage, the court is "[e]ssentially . . .

concerned only with 'whether the proposed settlement discloses

grounds to doubt its fairness or other obvious deficiencies such

as unduly preferential treatment of class representatives or

segments of the class, or excessive compensation of attorneys . .

. .'"  Id. at *10 (citation omitted).

> 1.   Terms of the Settlement Agreement

**Definitions**

(1) **The Settlement Class:**  Class Members include all non-
excluded residents of the United States who, as of the date of
the Preliminary Approval Order own or have owned a Class
Vehicle. (Stipulation of Settlement 4:24-26.)  Defendant or
its designee will determine if the Class Member is eligible
for  any  of  the  relief  available  under  the  Agreement.
Unresolved disputes regarding eligibility will be turned over
to  an  impartial  mediator  who  will  render  a  final,  non-
appealable decision.  (Id. at 11:4-10.)

16

(2) **The Class Vehicles:** "Class Vehicles" include 2002 through 2005 model year Saturn VUEs equipped with Vti transmissions and 2003 through 2004 model year Saturn IONs equipped with Vti transmissions.  (Id. at 5:4-6.)

(3) **Judgment:**  "Judgment" means the judgment to be entered by the court finally approving this Settlement Agreement and dismissing this action with prejudice.  (Id. at 5:7-10.)

(4) **Effective Date:** "Effective Date" means ten (10) business days after the later of (a) the date upon which the time for seeking appellate review of the Judgment (by appeal or otherwise) shall have expired; or (b) the date upon which the time for seeking appellate review of any appellate decision affirming the Judgment (by appeal or otherwise) shall have expired and all appellate challenges to the Judgment shall have been dismissed with prejudice without any person having any further right to seek appellate review thereof (by appeal or otherwise).  (Id. at 5:14-20.)

(5) **Class Notice:** "Class Notice" means the notice provided to Class Members after issuance of the Preliminary Approval Order.  (Id. at 5:21-22.)

(6) **Final Notice:**  "Final Notice" means the notice that will be provided to Class Members after the Effective Date.  (Id. at 5:23-24.)

(7) **Claim Form:** "Claim Form" means the forms to be sent to Class Members who purchased their Class Vehicles, new or used, along with the Final Notice.  (Id. at 5:25-27.)

(8) **Authorized Saturn Retailer:** "Authorized Saturn Retailer" means any Saturn Retailer in the United States that is a signatory to an existing and effective Saturn Retailer Agreement.  (Id. at 6:10-11.)

(9) **Released Claims:**  "Released Claims" means any and all past, present, and future claims, demands, causes of actions or liabilities based on or related in any way to Vti transmissions in Class Vehicles or (b) the factual allegations and legal claims that were made or could have been made in the Action.  Released Claims do not include any claim, demand or cause of action against defendant for property damage or personal injury in connection with Vti transmission.  (Id. at 6:12-17.)

(10) **Unknown Claims:**  "Unknown Claims" means any Released Claim that any plaintiff or Class Member does not know or suspect to exist in his, her or its favor at the time of the release provided for herein, including those claims which would have affected his, her or its settlement and release.  (Id. at 6:21-26.)

17

**Class Relief**

(1) **Generally:** The relief available to Class Members under the terms of the parties' Stipulation of Settlement is reimbursement for certain out-of-pocket expenses and losses relating to the Vti transmissions of Class Vehicles. (Id. at 7:9-11.) Reimbursable Expenses include (a) costs to inspect, repair or replace a malfunctioning Vti transmission, (b) costs to rent a replacement vehicle or secure other transportation while the malfunctioning Vti transmission was or is being inspected, repaired, or replaced, (c) costs to tow or transport the Class Vehicle to the place where the malfunctioning Vti transmission was or is being inspected, repaired, or replaced, and (d) documented expenses relating to the trade-in of a Class Vehicle with Vti transmission failure at time of trade-in as further limited and defined below ("trade-in costs"). (Id. at 7:11-18.) To be reimbursable, such costs must be incurred by the Class Member within 125,000 miles after the original retail-sale or lease of the Class Vehicle or within the time limitations set forth in Chart A below, whichever occurs first. (Id. at 7:18-22.) The relief provided shall not be assigned. (Id. at 7:22-26.)

(2) **Past Reimbursable Expenses:** Defendant will reimburse Class Members who incur Reimbursable Expenses for repair, rental, and towing costs relating to a Vti transmission on or before the date of Final Judgment ("Past Reimbursable Expenses") based on the percentages shown in Chart B below. (Id. at 8:2-5.) To obtain reimbursement, the Class Member must submit a Claim Form along with the requisite documentation of the Reimbursable Expenses incurred by the Class Member within one (1) year after the Effective Date. (Id. at 8:5-14.)

(3) **Past Trade-In With Vti Transmission Malfunction Reimbursement:** To claim reimbursement for "trade-in expense," the Class Member must submit a Claim Form and provide the requisite contemporaneous dealer documentation. (Id. at 8:16-21.) The reimbursement shall equal the repair estimate multiplied by the appropriate percentage from Chart B based on the Class Vehicle's mileage and the Class Member being either a new or used Vehicle purchaser. (Id. at 8:21-23.) Class Members may seek reimbursement of trade-in losses only upon proof that the Class Vehicle was traded-in before the date Class Notice was mailed to potential Class Members. (Id. at 8:23-25.) All claims for reimbursement of trade-in expense must be submitted within one (1) year after the Effective Date. (Id. at 8:23-9:2.)

(4) **Future Reimbursable Expenses:** Defendant will reimburse Class Members who incur an expense relating to a Vti transmission after the date of Final Judgment (except trade-in expense) ("Future Reimbursable Expenses") based on the percentages shown in Chart B below. (Id. at 9:4-6.) To obtain reimbursement, the Class Member must submit a Claim

Form along with the requisite documentation of the Reimbursable Expenses incurred by the Class Member. (<u>Id.</u> at 9:6-19.)

### CHART A

Model Year Date Before Which Expense is Reimbursable

| | |
|---|---|
| 2002 | January 1, 2010 |
| 2003 | January 1, 2011 |
| 2004 | January 1, 2012 |
| 2005 | January 1, 2012 |

(<u>Id.</u> at 9:20-26.)

### CHART B

| Vehicle Mileage | Reimbursement (New) | Reimbursement (Used) |
|---|---|---|
| 100,000 or less | 100 percent | 75 percent |
| 100,101-125,000 | 75 percent | 30 percent |

(<u>Id.</u> at 10:1-5.)

**Notification**

Defendant, in addition to all other relief provided herein, shall pay all costs of Class Notice and claims administration, which payments shall not diminish any relief provided to Class Members. (<u>Id.</u> at 10:19-21.) Defendant, subject to the terms of the Preliminary Approval Order, shall use its best efforts to direct or cause to be directed first-class mail notice to Class Members. (<u>Id.</u> at 10:21-25.) Defendant also agrees to provide appropriate notification to authorized Saturn Retailers. (<u>Id.</u> at 10:25-26.)

**Requests for Exclusion**

Any putative Class Member who wishes to be excluded from the Class must deliver a proper written request for exclusion to Class Counsel within the stipulated time-frame. (<u>Id.</u> at 13:27-14:1.) Any putative Class Member who does not file a timely written request for exclusion shall be bound by all subsequent proceedings, orders and judgments in the Action. (<u>Id.</u> at 14:5-7.)

**Objections to the Settlement**

Any Class Member who has not submitted a timely written request for exclusion and who wishes to object to the Agreement, the proposed settlement, or to the request for Attorneys' Fees and Expenses, must serve a proper written objection within the stipulated time-frame. (<u>Id.</u> at 14:19-22.)

19

1          2.   Preliminary Determination of Adequacy

2          Although "assessing the fairness, adequacy and

3 reasonableness of the substantive terms of a settlement agreement

4 can be challenging," Staton v. Boeing Co., 327 F.3d 938, 959

5 (9th Cir. 2003), the court is assisted in its inquiry where, as

6 here, "the stipulation and settlement appear to be, for the most

7 part, the result of vigorous, arms-length bargaining." Alberto,

8 2008 WL 2561106, at *10.

9          Before addressing the primary concerns at this stage of

10 the inquiry--"attorneys' fees and the distribution of relief"--

11 the court notes its concern with the administration of the

12 settlement agreement. Staton, 327 F.3d at 960.  While most

13 settlement agreements provide for an equal, or easily definable,

14 division of a lump sum between the class members, the parties'

15 settlement contemplates an individualized assessment of damages

16 for each member.  For obvious reasons, administration of such a

17 settlement will require more time and resources than a

18 traditional settlement, thus greater consideration about how the

19 settlement will be administered will provide the court with

20 greater confidence as to its fairness and adequacy.  The court

21 also lacks confidence that all of the class members will have

22 retained the requisite receipts and estimates described at oral

23 argument, which raises concerns as to the reasonableness of a

24 blanket requirement for receipts and estimates.

25          a.  Attorneys' Fees

26          For a settlement to be fair and adequate, "a district

27 court must carefully assess the reasonableness of a fee amount

28 spelled out in a class action settlement agreement."  Id. at 963.

20

The district court has discretion to use either the percentage-of-the-fund method[8] or the lodestar/multiplier method[9] in calculating fee awards in common fund cases.  In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1295 (9th Cir. 1994).  Because "no presumption in favor of either the percentage or the lodestar method encumbers the district court's discretion to choose one or the other," the choice between percentage calculation and lodestar depends upon the circumstances of the case.  Id. at 1295, 1296 (citing Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)).  Irrespective of the chosen method, "the district court should be guided by the fundamental principle that fee awards out of common funds be 'reasonable under the circumstances.'"  Id. (quoting Florida v. Dunne, 915 F.2d 542, 545 (9th Cir. 1990)).

Plaintiffs' counsel requests an attorneys' fee award in the amount of $4,425,000.00, (Pls.' Mem. in Supp. of Mot. for Preliminary Approval of Class Action Settlement 16:22), and insists that this amount is reasonable because it constitutes less than five percent of the estimated settlement amount--i.e., a number significantly below the Ninth Circuit's twenty-five percent benchmark for attorneys' fees in common fund cases.  See

---

[8]     Under the percentage-of-the-fund method, the court calculates the fee award by designating a percentage of the total common fund.  Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).

[9]     Under the lodestar method, the court calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hour rate and then enhancing that figure, if necessary, to account for the risks associated with the representation.  Paul, Johson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989).

1    Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998)

2    ("This circuit has established 25% of the common fund as a

3    benchmark award for attorney fees.").   Nonetheless, the Ninth

4    Circuit has also stated that "[t]he 25% benchmark rate, although

5    a starting point for analysis, may be inappropriate in some

6    cases.   Selection of the benchmark or any other rate must be

7    supported by findings that take into account all of the

8    circumstances of the case."   Vizcaino v. Microsoft Corp., 290

9    F.3d 1043, 1047 (9th Cir. 2002); see also In re Wash. Pub. Power

10   Supply Sys. Sec. Litig., 19 F.3d at 1295-96 (holding that, in

11   passing on post-settlement fee applications, "courts cannot

12   rationally apply any particular percentage--whether 13.6 percent,

13   25 percent or any other number--in the abstract, without

14   reference to all the circumstances of the case").

15        While the instant record shows no evidence of bribery

16   or collusion in reference to the requested attorneys' fees, it is

17   nonetheless devoid of any direct support for plaintiffs'

18   counsel's requested fee amount.   Specifically, this action is

19   less than a year old.   There has not been a single hearing in the

20   matter, and the only motions filed--defendant's two motions to

21   dismiss--were mooted by the plaintiffs' decision to amend its

22   original Complaint as a matter of course and the parties'

23   stipulated continuance pending mediation, respectively.   The

24   parties also fail to proffer a reliable estimate as to the final

25   class size, and the nature of the relief being granted to the

26   class makes it difficult to predict the final amount of the class

27

28

22

award.[10]   Thus, while the parties estimate that $4,425,000.00 is
less than five percent of the value of the estimated class
relief, this percentage remains entirely speculative.

        Other than filing three complaints, one opposition, and
the instant motion--as well as engaging in limited discovery and
the subsequent mediation--any circumstances necessitating a
$4,425,000.00 fee award for plaintiff's counsel are not readily
apparent to the court.  Compare Fischel v. Equitable Life Assur.
Soc'y of the U.S., 307 F.3d 997, 1007 (9th Cir. 2002) ("The fact
that the case was settled early in the litigation supports the
district court's ruling [not to award class counsel's requested
fee award request because] the percentage-of-the-fund approach
might very well have been a 'windfall.'"); with Vizcaino, 290
F.3d at 1050 (upholding percentage of the fund fee award where
class counsel submitted evidence showing that they "achieved
excellent results" in a "extremely risky" matter, their
"performance generated benefits beyond the cash settlement fund,"
and their representation of the class "extended over eleven
years, entailed hundreds of thousands of dollars of expense, and
required counsel to forgo significant other work, resulting in a

---

[10]   Outside of the seven named plaintiffs, none of the
class relief is currently subject to calculation.  Unlike most
"percentage of the fund" cases, the instant "fund" is not a
predetermined award amount from which the parties can readily
articulate a precise attorneys' fee percentage.  Rather,
defendant must wait at least until the putative Class Members'
responses to find out whether they purchased a new or used
Saturn, whether they will benefit directly from the extended
warranty provisions, and whether their vehicle's Vti transmission
failed (or will fail) within the mileage and time limits as
delineated in the parties' Stipulation of Settlement.  Thus, only
years after this settlement is approved will the parties have the
capability to denote an specific class relief amount and, inter
alia, an accurate "percentage of the fund" fee award.

decline in the firm's annual income"); see also Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) (affirming percentage of the fund fee award where "the litigation lasted more than 13 years, obtained substantial success, and involved complicated legal and factual issues"); Santos v. Camacho, No. 04-0006, 2008 WL 1699448, at *34 (D. Guam Apr. 10, 2008) (holding that, given "the minimal amount of discovery conducted" and the lack of "any pre-trial or trial proceedings," "[i]t seems quite clear that the requested 10% of the common fund would be unreasonable").

Where, as here, plaintiffs' counsel cannot provide sufficient documentation in support of its fee and the circumstances "indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors," the "benchmark percentage should be adjusted, or replaced by a lodestar calculation." Six Mexican Workers, 904 F.2d at 1311. "At the very least, a court should employ the lodestar method as a cross-check on the percentage method in order to ensure a fair and reasonable result." Alberto v. GMRI, Inc., No. 07-1895, 2008 WL 2561106, at *13 (E.D. Cal. June 24, 2008) (citing In re Immunex Sec. Litig., 864 F. Supp. 142, 144 (W.D. Wa. 1994)); see also Santos, 2008 WL 1699448, at *34 ("[A]fter doing a lodestar cross-check with the percentage requested, this request of 10% seems far less reasonable.").

Because significant questions remain regarding the fair and reasonable allocation of attorneys' fees, the court will decline plaintiff's invitation to employ only the percentage-of-

1  the-fund method and will instead exercise its discretion to

2  calculate and/or cross-check the requested fee award via the

3  lodestar method.   Recognizing that plaintiffs' counsel has

4  already indicated that it intends to "prepare and file a

5  memorandum in support of the attorneys' fee request prior to the

6  final approval hearing," (Pls.' Mem. in Supp. of Mot. for

7  Preliminary Approval of Class Action Settlement 17:5-6), the

8  court will instruct plaintiffs' counsel to include a thorough

9  petition detailing the hours reasonably spent representing

10  plaintiffs in this action and the justification for any

11  enhancement due to risks associated with its representation.

12                b.   Distribution of Award to Named Class Members

13          "[N]amed plaintiffs, as opposed to designated class

14  members who are not named plaintiffs, are eligible for reasonable

15  incentive payments."  Staton, 327 F.3d at 977.  The district

16  court, however, must "evaluate their awards individually" to

17  detect "excessive payments to named class members" that may

18  indicate "the agreement was reached through fraud or collusion."

19  Id. at 975.  To assess whether an incentive payment is excessive,

20  district courts balance "the number of named plaintiffs receiving

21  incentive payments, the proportion of the payments relative to

22  the settlement amount, and the size of each payment."  Id.

23          The proposed Settlement Agreement provides that each

24  named plaintiff shall receive an incentive payment of $2,500 for

25  his or her role as class representative.  (Pls.' Mem. in Supp. of

26  Mot. for Preliminary Approval of Class Action Settlement 16:13.)

27  Courts have generally found that incentive payments of up to

28  $5,000 are reasonable.  See, e.g., In re Mego Fin. Corp. Sec.

Litig., 213 F.3d 454, 463 (9th Cir. 2000) (approving incentive
awards of $5,000 each to the two class representatives of 5,400
potential class members in a settlement of $ 1.725 million); In
re SmithKline Beckman Corp. Sec. Litig., 751 F. Supp. 525, 535
(E.D. Pa. 1990) (approving incentive awards of $5,000 for one
named representative of each of the nine plaintiff classes
involving more than 22,000 claimants in a settlement of $22
million).  As noted above, the size of the Class and the amount
of the proposed relief remain uncertain; however, given the
general scope of proposed settlement, the court is confident that
the $2,500 incentive award for each named plaintiff will not
amount to an excessive percentage of the ultimate award.[11]  See
In re Mego Fin. Corp., 213 F.3d at 463 (approving $5,000
incentive payments to two named plaintiffs as such award did not
exceed 0.56% of total settlement).

While portions of the parties' proposed settlement
agreement admittedly suffer from the aforementioned shortcomings,
the court trusts that the deficiencies can be cured prior to the
final fairness hearing in order to ensure a fair, adequate, and

---

[11]   Plaintiffs' counsel shall, however, be prepared to
inform the court as to "the services [that each named plaintiff]
provided and the risks they incurred during the course of the
class action litigation," as such awards are only "justified when
the class representatives expend considerable time and effort on
the case, especially by advising counsel, or when the
representatives risk retaliation as a result of their
participation."  Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 694
(N.D. Ga. 2001); see also Cook v. Niedert, 142 F.3d 1004, 1016
(7th Cir. 1998) (approving an incentive payment of 0.17% of total
settlement to the named plaintiff because he had "spent hundreds
of hours with his attorneys and provided them with an abundance
of information"); In re Cont'l Ill. Sec. Litig., 962 F.2d 566,
571-72 (7th Cir. 1992) (upholding a district court's rejection of
a proposed $10,000 award to a named plaintiff "for his admittedly
modest services" in a settlement of $45 million).

1  reasonable settlement.  Accordingly, because the court

2  preliminarily finds that the Settlement Class meets the requisite

3  certification standards and the terms of the parties' Settlement

4  Agreement are acceptable pending the fairness hearing, the

5  Stipulation for Settlement will be granted.

6       IT IS THEREFORE ORDERED that (1) plaintiffs motion for

7  leave to amend their Complaint be, and the same hereby is GRANTED

8  and (2) the parties' joint motion for preliminary approval of

9  settlement be, and the same hereby is, GRANTED.

10       IT IS FURTHER ORDERED that:

11       (1) the following class be provisionally certified for

12  the purpose of Settlement in accordance with the terms of the

13  Stipulation for Settlement: all non-excluded residents of the

14  United States who, as of the date of the Preliminary Approval

15  Order, own or have owned a Class Vehicle;

16       (2) if the Stipulation for Settlement does not receive

17  the court's final approval, should final approval be reversed on

18  appeal, or should the stipulation otherwise fail to become

19  effective for any reason (including any party's exercise of a

20  right to terminate under the Stipulation for Settlement), the

21  court's preliminary grant of certification of the class shall be

22  vacated and become null and void without further action or order

23  of the court;

24       (3) the Stipulation for Settlement--and the Settlement

25  provided therein--are preliminarily approved as fair, reasonable,

26  and adequate within the meaning of Federal Rule of Civil

27  Procedure 23, subject to final consideration at the fairness

28  hearing provided for below;

1          (4) for purposes of the Stipulation for Settlement and

2     carrying out the terms of the settlement only:

3               a.   plaintiffs Kelly Castillo, Nichole Brown,

4     Brenda Alexis Digiandomenico, Valerie Evans, Barbara Allen,

5     Stanley Ozarowski, and Donna Santi are appointed as the

6     representatives of the Settlement Class;

7               b.   The Lakin Law Firm, P.C. and Kershaw Cutter &

8     Ratinoff, L.L.P. are appointed as Class Counsel for the Settlment

9     Class and shall be responsible for the acts and activities

10    necessary or appropriate to present this Stipulation for

11    Settlement and the proposed Settlement to the court for approval

12    and, if the Settlement is finally approved, to implement the

13    Settlement in accordance with the terms of the Stipulation for

14    Settlement and orders of the court;

15          (5) defendant General Motors Corporation is hereby

16    approved and appointed as the Settlement Administrator to carry

17    out the duties of the Claims Administrator set forth in the

18    Stipulation for Settlement;

19          (6) the form and content of (a) the Notice of

20    Settlement of Class Action and (b) the Request for Exclusion from

21    Settlement (Notice of Proposed Class Action Settlement Ex. 1) is

22    approved;

23          (7) the form and content of the Class Claim Forms

24    (Notice of Proposed Class Action Settlement Exs. 6, 7) is

25    approved;

26          (8) a hearing (the "Final Fairness Hearing") shall be

27    held before this court on February 17, 2009 at 2:00 p.m. in

28    Courtroom 5 to determine whether the proposed settlement, on the

terms and conditions set forth in the stipulation, is fair,
reasonable, adequate, and should be approved by the court; to
determine whether a judgment as provided in the Stipulation for
Settlement should be entered finally approving the Settlement;
and to consider Class Counsel's applications for attorneys' fees,
reimbursement of costs, and service payments.  The court may
continue the Final Fairness Hearing without further notice to the
members of the Settlement Class;

        (9) within thirty-one (31) days prior to the Final
Fairness Hearing, Class Counsel shall serve and file with the
court the Settlement Administrator's declaration setting forth
the services rendered, proof of mailing, and list of all Class
Members who have time opted out of the Settlement;

        (10) within thirty-one (31) days prior to the Final
Fairness Hearing, Class Counsel shall file and serve all papers
in support of the Settlement, request for enhancement for the
class representatives, and any request for attorneys' fees and
costs;

        (11) any person who has standing to object to the terms
of the proposed Settlement may appear at the Final Fairness
Hearing in person or by counsel, if an appearance is filed as
hereinafter provided, and be heard to the extent allowed by the
court in support of, or in opposition to, (1) the fairness,
reasonableness, and adequacy of the proposed Settlement; (2) the
requested award of attorneys' fees, reimbursement of costs, and
incentive payment to class representative; and/or (3) the
propriety of class certification.  To be heard in opposition, a
person must, within forty-five (45) calendar days after notice is

1  mailed, (a) serve by hand or through the mails written notice of

2  his, her, or its intention to appear, stating the name and case

3  number of this litigation and each objection and the basis

4  therefore, together with copies of any papers and briefs, upon

5  class counsel and upon counsel for defendant, and (b) file said

6  appearance, objections, papers, and briefs with the court,

7  together with proof of service of all such documents upon counsel

8  for the parties.  Responses to any such objections and Class

9  Counsel's application for attorneys' fees, reimbursement of

10  costs, and the class representatives' incentive payment shall be

11  served by hand or through the mails on the objectors (or on the

12  objector's counsel if any there be) and filed with the Clerk of

13  this court no later than fourteen (14) calendar days before the

14  Final Fairness Hearing.  Objectors may file optional replies no

15  later than one week before the Final Fairness Hearing in the same

16  manner described above.  Any Class Member who does not make his,

17  her, or its objection in the manner provided herein shall be

18  deemed to have waived such objection and shall forever be

19  foreclosed from objecting to the fairness or adequacy of the

20  proposed settlement as memorialized in the Stipulation for

21  Settlement, the judgment entered, and the award of attorneys'

22  fees, expenses, and the incentive payment unless otherwise

23  ordered by the court;

24         (12) pending final determination of whether the

25  Settlement should be ultimately approved, the court preliminarily

26  enjoins all Class Members (unless and until the Class Member has

27  submitted a timely and valid Request for Exclusion) from filing

28

1  or prosecuting any claims, suits, or administrative proceedings

2  regarding claims to be released by the Settlement.

3  DATED:   September 5, 2008

4

5  _____

   WILLIAM B. SHUBB

6  UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28