Robert W. Schmieder II (admitted *pro hac vice*)
Mark L. Brown (admitted *pro hac vice*)
LAKINCHAPMAN LLC
300 Evans Avenue
P.O. Box 229
Wood River, Illinois 62095
Telephone:  (618) 254-1127
Facsimile:   (618) 254-0193

C. Brooks Cutter, SBN 121407
KERSHAW CUTTER & RATINOFF LLP
401 Watt Avenue
Sacramento, California 95864
Telephone:  (916) 448-9800
Facsimile:   (916) 669-4499

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY CASTILLO, NICHOLE BROWN, BRENDA ALEXIS DIGIANDOMENICO, VALERIE EVANS, BARBARA ALLEN, STANLEY OZAROWSKI, and DONNA SANTI, *Individually and on behalf of all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS CORPORATION,<br><br>Defendants. | Case No.: 2:07-CV-02142 WBS-GGH<br><br>**CLASS COUNSEL'S MOTION FOR INCENTIVE PAYMENT TO CLASS REPRESENTATIVES AND ATTORNEYS' FEES AND COSTS** |

Pursuant to FRCP 23(h) and FRCP 54(d)(2), Class Counsel hereby request that this Court award each Class Representative the negotiated incentive payment of $2,500, which GM agreed to pay in addition to the class relief, and award Class Counsel their reasonable attorneys' fees and costs in the total amount of $4,425,000 – the amount negotiated by the parties **after** reaching

an agreement regarding class relief, paid by GM *in addition* to the class relief, and ***agreed upon*** by the parties with the assistance of a mediator.

## I. THE NEGOTIATED INCENTIVE PAYMENTSY TO CLASS REPRESENTATIVES ARE REASONABLE AND APPROPRIATE.

After resolving class relief, the parties then negotiated the incentive payment to the Class Representatives, Kelly Castillo, Nichole Brown, Brenda Alexis Digiandomenico, Valerie Evans, Barbara Allen, Stanley Ozarowski, and Donna Santi ("Class Representatives").  *Doc. 45, Doc. 48-2 at ¶III.7, Doc. 67 at  Exs. MM, NN.*  Ultimately, GM agreed to pay and the Class Representatives agreed to accept $2,500 each as an incentive payment.  *Doc. No. 48-2 at ¶¶ III.7, III.9.*  A class representative is entitled to some compensation for the expense and effort he or she expended on behalf of the Class.

In considering petitions for incentive awards, courts review the following factors: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. Van Vranken v. Atlantic Richfield Company, 901 F.Supp. 294, 299 (N.D. Cal. 1995); Fitzgerald v. City of Los Angeles, 2003 WL 25471424 at *2 (C.D. Cal. 2003).  The class representative not only initiates the action, but also serves as a fiduciary to the Class.  In that capacity, the representative has the obligation, among other things, to consult with class counsel concerning the merits of the litigation, to represent the interests of the class as a whole throughout the litigation process, and to respond to opposing counsel's discovery, including depositions. Huguley v. General Motors Corp., 128 F.R.D. 81 (E.D. Mich. 1989), *aff'd*, 925 F.2d 1464 (6th Cir. 1991).  The class representatives assume the burdens of litigation that absent class members do not shoulder, and they do so without promise of reward and with the risk that the litigation may not succeed.

The Class Representatives in this case were no exception.  Class Representatives were called on and/or agreed to comply with each of the foregoing obligations, and they produced

documents, responded to document requests, reviewed various pleadings and contributed information for those pleadings, and consulted with Class Counsel through all phases of the proceedings.  Class Representatives were also willing and available to answer Defendant's discovery, including depositions.  Because the Class Representatives provided and/or were available to provide these benefits to the Class, it is appropriate to provide them with additional consideration.  But for the initiative of the Class Representatives here, the benefits available to all class members would not have been realized.

The settlement negotiations were carefully tailored to avoid any conflict between the Class Representatives and the Class.  First, the parties did not reach any agreement on the amount of any incentive allocation until after resolution of class benefits and the Class Representatives did not preface their willingness to accept the settlement upon the payment of any incentives.  The parties avoided even the appearance of any conflict.  Second, the value of the incentive award is not so substantial as to give rise to even any theoretical conflict.  Furthermore, as this Court noted, an incentive award is not unfair when the value of the incentive award does not reduce the amount of settlement funds available to the rest of the class.  Alberto v. GMRI, Inc., 2008 WL 4891201 at *12 (E.D. Cal. 2008).  Also, as is here, and as this Court has relied on in the past, none of the class members have objected to the amount of additional compensation sought by the named plaintiffs.  Id.  Here, the incentive award is consistent with the special effort and obligation assumed by the Class Representatives.  Counsel did not promise the payment of any incentives to the Class Representatives and the matter of such payments are within the discretion of the Court.

Counsel requests that this Court approve payment of an incentive fee of $2,500 to each of the Class Representatives.  These incentive awards will be paid by Defendant and will not be

deducted from the benefits conferred upon the Class by the Settlement Agreement.  These incentive awards are reasonable.

**II.    THERE IS A PRESUMPTION THAT THE ATTORNEYS' FEES AND COSTS NEGOTIATED WITH THE SUPERVISION OF A MEDIATOR AND AGREED UPON BY THE PARTIES ARE REASONABLE BECAUSE THERE WAS NO <u>SELF-DEALING OR CONFLICT OF INTEREST</u>.**

This Court "may award reasonable attorneys' fees and non-taxable costs that are authorized … by the parties' agreement."  FRCP 23(h).  An agreed-upon award of reasonable attorneys' fees and expenses is proper in a class action settlement.  <u>Dehoyos v. Allstate Corp.</u>, 240 F.R.D. 269, 322 (W.D. Tex. 2007).  In fact, courts have encouraged litigants to resolve fee issues by agreement if possible.  <u>Lobatz v. U.S. W. Cellular, Inc.</u>, 222 F.3d 1142, 1149-50 (9th Cir. 2000) (affirming award of fees and expenses to be paid separate from class action settlement where defendant agreed not to oppose request up to negotiated amount); <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1029 (9th Cir. 1998) (upholding $5.2 million attorneys' fees and costs negotiated by the parties after settlement of class relief); <u>Dehoyos</u>, 240 F.R.D. at 322-23 (awarding $11.72 million in attorneys' fees and expenses negotiated by the parties).  As the Supreme Court has explained, "[a] request for attorneys' fees should not result in a second major litigation."  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983).  "Ideally, of course, litigants will settle the amount of a fee."  <u>Id.</u>  Other courts have echoed the Supreme Court's encouragement:

> In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandably, sympathetically, and professionally arrive at a settlement as to attorneys' fees.  Although a settlement generally leaves every litigant partially dissatisfied, so does a judicial award for attorneys' fees.

<u>Johnson v.  Georgia Highway Express, Inc.</u>, 488 F.2d 714, 720 (5th Cir. 1974).  *See also* <u>In re Sony SXRD Rear Projection TV Class Action Litig.</u>, 2008 WL 1956267 at *15 (S.D.N.Y. May 1, 2008) (encouraging the negotiation of fee agreements in class actions).

When confronted with an agreement regarding attorneys' fees and costs, courts are nonetheless cognizant of the "opportunities for collusive arrangements in which defendants can pay the attorneys for the plaintiff class enough money to induce them to settle the class action for

too little benefit to the class." <u>Zucker v. Occidental Petroleum Corp.</u>, 192 F.3d 1323, 1397 (9th Cir. 1999).  Absent any danger of such collusion, however, courts award the attorneys' fees and costs negotiated by the parties.  *See, e.g.,* <u>Cummings v. Connell</u>, 2006 WL 3951867 (E.D. Cal. Nov. 27, 2006) (J. Shubb).

      In this case, it was not until after the parties had fully negotiated the relief for the Class and entered into a signed term sheet for the class relief that they began negotiating Class Counsel's attorneys' fees and costs.  *Doc. 45; Doc. 48-2 at ¶III.7, Doc. 67 at Exs. MM , NN.* Ultimately, GM agreed to pay and Class Counsel agreed to accept $4,425,000.  *Doc. 48-2 at ¶¶ II.16, III.7, III.9.*  This amount represents a mere 7.17 percent of the conservatively estimated value of the class relief provided under the Settlement.[1]  *Exs. KK, OO.*  It is also comparable to (actually less than) attorneys' fees and costs awarded in similar class actions.  *See, e.g.,* <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1029 (9th Cir. 1998) (awarding $5.2 million attorneys' fees and costs for settlement involving repair of defective door latch); <u>O'Keefe v. Mercedes-Benz USA, LLC</u>, 214 F.R.D. 266, 304 (E.D. Pa. 2003) (awarding $4.9 million in attorneys' fees and costs for settlement involving extended warranty for very limited problem).  Moreover, the parties agreed that the attorneys' fees and expenses "will not reduce benefits available to Class Members nor will Class Members be required to pay any portion of the Attorneys' Fees and Expenses."  *Doc. No. 48-2 at ¶III.7.*  In other words, the attorneys' fees and costs do not diminish class benefits in any way.

      Where attorneys' fees and costs diminish class benefits, a court must carefully review the award to protect the interests of the absent class members.  <u>McBean v. City of New York</u>, 233 F.R.D. 377, 392 (S.D.N.Y. 2006).  If, however, they do not diminish the class benefits, then "the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of

---

[1]  In addition, settlement classes often bear the cost of notice, settlement administration, and attorneys' fees and costs.  <u>Mangone v. First Bank</u>, 206 F.R.D. 222, 228 (S.D. Ill. 2001).  Where, as here, the settlement provides that the defendant pay those fees, expenses, and costs in addition to other class relief, a court should consider them to determine the overall value of the settlement.  <u>Id.</u> (finding an additional $12.6 million in class benefit by defendants' agreement to pay attorneys' fees, notice costs, and class settlement administration costs).  Accordingly, the attorneys' fees and costs account for approximately 7.18 percent of the total class benefits.

interest between attorneys and class members." Id.  See also Dehoyos, 240 F.R.D. at 322; Local 56 United Food & Comm. Workers Union v. Campbell's Soup Co., 954 F. Supp. 1000, 1005 (D. N.J. 1997).  The arm's-length negotiations of attorneys' fees that would not diminish the class benefits "do not have the potential for the evils of extortion and collusion."  Stokes v. Saga Int'l Holidays, Ltd., 376 F. Supp. 2d 86, 89 (D. Mass. 2005).

In addition to not diminishing the class relief here, attorneys' fees were not even negotiated until after resolution of the class relief.  *Docs.. 45, 48-2 at ¶III.7, and 67 at  Exs. MM, NN.*  Here, Class Counsel and GM met in Chicago on March 13, 2008 to discuss discovery matters and the possibility of a settlement.  *Doc. 67 at Ex. NN.*  At that meeting, the parties agreed to mediate before a JAMS mediator in an attempt to reach a class resolution.  *Docs. 39 and 67 at  Ex. NN.*  On May 21, 2008, the parties negotiated class relief before Ronald Sabraw, a former complex litigation judge of Alameda County, California.  *Docs. 45 and 67 at Exs. MM, NN.*  At approximately 5 p.m., the parties executed a settlement term sheet.  *Id.*  At no time before signing the term sheet did Class Counsel discuss any amount of attorneys' fees or costs. *Id.*  The term sheet only provided that GM would pay any incentive awards and attorneys' fees and costs in addition to the class relief.  *Id.*  Only after all parties and the mediator signed the term sheet did Class Counsel begin to discuss attorneys' fees and costs.[2]  As a result, there is a ***presumption*** of reasonableness where (1) attorneys' fees and expenses do not diminish class relief, and (2) the parties did not negotiate or discuss attorneys' fees until after an agreement was reached between the parties on all other terms of the settlement.  Dehoyos, 240 F.R.D. at 322-23.

Along with the presumption of reasonableness, a court should be "reluctant" to substitute its judgment in place of the judgment of the adversarial parties.  In re First Capital Holdings Corp. Financial Product Sec. Litig., 1992 WL 226321 at *4 (C.D. Cal. June 10, 1992).  Where attorneys' fees do not in any way diminish the class benefits, "reduc[ing] the award of class counsel's fees … would not confer a greater benefit upon the class, but rather would only benefit [defendant]."  Dehoyos, 240 F.R.D. at 322.

---

[2]  Even then, Class Counsel negotiated incentive awards for the Class Representatives before discussing or negotiating attorneys' fees and costs.  *Docs. 45 and 67 at Exs. MM , NN.*

> The fee was negotiated at arm's length with sophisticated defendants and the attorneys who were intimately familiar with the case, the risks, the amount and value of their time, and the nature of the result obtained for the class. Where there is such arm's length negotiation and there is no evidence of self-dealing or disabling conflict of interest, the Court is reluctant to interpose its judgment as to the amount of attorneys' fees in the place of the amount negotiated by the adversarial parties in the litigation.

In re First Capital, 1992 WL 226321 at *4 (approving $8 million in attorneys' fees negotiated by the parties). Because GM agreed to pay attorneys' fees and costs in addition to the class relief, GM had every incentive to pay as little as possible.

> But where, as here, the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement "not to oppose" an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the court for determination after the settlement.

Malchman v. Davis, 761 F. 2d 893, 905 n.5 (2nd Cir. 1985). *See also* Evans v. Jeff D., 475 U.S. 717, 734-43 (1986); Williams v. MGM-Pathe Comm. Co., 129 F.3d 1026, 1027 (9th Cir. 1997) (stating that defendants had a responsibility to negotiate to limit attorneys' fees).

In addition to Class Counsel negotiating with a sophisticated defendant and its experienced counsel, the parties negotiated the attorneys' fees and costs with the assistance of a mediator, retired judge Ronald Sabraw. *Doc. Nos. 45, 48-2 at ¶III.7, and 67 at Exs. MM, NN.* ("with the assistance of the Mediator"). "The arm's length negotiation of attorneys' fees under the supervision of a mediator weighs strongly in favor of approval." McBean, 233 F.R.D. at 392. *See also* Hanlon, 150 F.3d at 1029.

There was no collusion, self-dealing, or conflict of interest. *Docs. 45 and 67 at Exs. MM, NN.* The attorneys' fees and costs do not diminish the class benefits whatsoever and were not negotiated until after resolution of the class relief. *Id.* Furthermore, the negotiations of attorneys' fees and costs were adversarial and resolved with the assistance of a mediator. *Id.*

During the mediation, Class Counsel offered to let this Court decide the appropriate amount of attorneys' fees and costs with no cap. *Ex. NN.*  GM obviously did not want to assume that risk in light of the very high value of the benefit to the Class (described in more detail below).  The parties subsequently reached an agreement after a series of brief phone conversations based upon the risks to both sides, after further research, and with the assistance of the mediator. *Doc. 45 and 67 at Exs. MM, NN.*   Under these circumstances, there is a presumption of reasonableness, the supervision of a mediator weighs strongly in favor of approval, and a court should be reluctant to substitute its judgment for an adversarial process that resulted in the agreement to pay $4,425,000 in attorneys' fees and costs.  In addition, the attorneys' fees and costs are a small percentage of the class benefit, are comparable to awards in similar class action, and are otherwise reasonable.  For all of the foregoing reasons, Class Counsel request that this Court approve the agreement of $4,425,000 in attorneys' fees and costs.

### A.   THE NEGOTIATED ATTORNEYS' FEES AND COSTS ARE WELL BELOW THE BENCHMARK OF REASONABLENESS ESTABLISHED BY THE NINTH CIRCUIT.

Where attorneys' fees and costs diminish class benefits, courts regularly compare attorneys' fees to a "benchmark" to determine whether they are reasonable.  In the Ninth Circuit, the benchmark is twenty-five percent (25%) of the value of the common class benefit. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047-48 (9th Cir. 2002); Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993); Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990); Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989).  By comparing the attorneys' fees to a benchmark, courts protect the class benefits from unwarranted diminution of the class relief through the payment of attorneys' fees and expenses. "In those situations, every additional dollar given to class counsel means one less dollar for the class …." In re Cendant Corp. Litig., 264 F.3d 201, 256 (3d Cir. 2001).

Since the attorneys' fees here do *not* diminish class benefits, this Court's role changes. McBean, 233 F.R.D. at 392; Dehoyos, 240 F.R.D. at 322; Local 56 United Food & Comm. Workers Union, 954 F. Supp. at 1005; Stokes, 376 F. Supp. 2d at 89.  Unless there was a collusive arrangement to exchange class relief for attorneys' fees, there is a presumption that the

attorneys' fees negotiated by the parties are reasonable.  *See, e.g.*, <u>Dehoyos</u>, 240 F.R.D. at 322-23; <u>Cummings</u>, 2006 WL 3951867.  Regardless of the presumption of reasonableness, the strong weight given to mediator supervision, and fervent court reluctance to substitute judgment for an adversarial negotiating process, the attorneys' fees and costs here are a small percentage of the class benefit—well within the benchmark.

The calculation of attorneys' fees based upon the value of the common class benefit is appropriate regardless of either the existence of an actual fund, <u>Community Care Centers, Inc. v. Indiana Family & Social Svcs. Admin.</u>, 716 N.E.2d 519, 546 (Ind. App. 1999); <u>National Treasury Employees Union v. Nixon</u>, 521 F.2d 317, 320-21 (D.C. Cir. 1975), or whether the defendant pays attorneys' fees in addition to the class benefit.  <u>In re Prudential Ins. Co. of Am. Sales Practice Litig.</u>, 148 F.3d 283, 329-34 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999). As one court explained:

> The injunction in this case was in the best interests of the Class as a whole.  If the injunction had not been sought and granted, the Class would have been limited to the remedy of pursuing pecuniary damages after the possible determination by the trial court that the implementation of Rule 4.2 was indeed an illegal system.  In that instance, there is no question that there would exist a tangible fund against which attorney's fees could be assessed.  However, this option would have not operated in the best interest of the Class. …  Further, we see no appreciable difference between the fund in this case and the fund which might have been created in the scenario described above where the Class seeks damages after the class members have been harmed.  As did the trial court, we decline to punish Class Counsel for acting in the best interests of the Class.

<u>Community Care Centers, Inc.</u>, 716 N.E.2d at 546 (affirming $6.25 million attorneys' fee award based upon $65 million class benefit).  *See also* <u>Johnston v. Comerica Mortgage Corp.</u>, 83 F.3d 241, 246 (8th Cir. 1996); <u>In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.</u>, 55 F.3d 768, 821 (3d Cir. 1995); <u>Schwartz v. Citibank (S. Dak.), N.A.</u>, CV 00-00075 LGB (C.D. Calif. Dec. 14, 2000), *aff'd*, 50 Fed. Appx. 832 (9th Cir. 2002).

To compare the attorneys' fees to the benchmark, a court must first make a "reasonable estimate" of the total value of a class settlement.  <u>In re Prudential Ins. Co. of Am. Sales Practice</u>

Litig., 148 F.3d at 333-34.  Here, actuarial expert Mark Johnson conservatively estimated that the cost for GM to transfer its liability under the Settlement in light of anticipated claims for past and future reimburseable expenses is $57,317,250.  *Doc. 67 at Ex. KK*.  There are valid reasons to believe that the actual value to the Class Members (rather than the cost to GM) is even higher than Mr. Johnson's estimate.  *Doc. 67 at Ex. OO*.  In addition, the total value of a class settlement also includes the cost of notice, settlement administration, and attorneys' fees and costs where the defendant agrees to pay them in addition to the direct class relief.  Mangone, 206 F.R.D. at 228.  Therefore, a very conservative reasonable estimate of the total value of the class settlement is $61,742,250 (*i.e.*, $57,317,250 + $4,425,000).  *Docs. 48-2 and 67 at Ex. KK*.

With a class settlement worth approximately $61,742,250, the 25% benchmark of reasonable attorneys' fees is $15,435,562.  *Docs. 48-2 and 67 at Ex. KK*.  A court may decide to apply the benchmark or adjust attorneys' fees to a higher or lower percentage by considering: (a) whether exceptional results were achieved; (b) the degree of risk for Class Counsel; (c) whether there were benefits to the class beyond the immediate generation of a cash fund; (d) the range of fee awards from class benefits of comparable size; and (e) Class Counsel's investment in the case and their foregoing other work.  Vizcaino, 290 F.3d at 1048-50.  Each of these factors supports the application of the benchmark amount, but Class Counsel only seeks the agreed-amount of attorneys' fees and costs provided in the Settlement.

The Settlement provides exceptional results through the reimbursement of costs associated with transmission malfunctions (repair, replacement, inspection, towing, rental vehicle, and past trade-in loss), past and future, at odometer reading through 125,000 miles. GM does not otherwise offer extended warranty coverage for purchase past 100,000 miles.  *Doc. 67 at Ex. TT*.  Moreover, third-party warranty coverage through 125,000 is rather costly.  *Doc. 67 at Exs. OO, VV*.  The class members have overwhelmingly supported the Settlement and thanked Class Counsel for their efforts.  *Doc. 67 at Exs. WW-JJJ*.

There was also significant risk for Class Counsel.  Class Counsel undertook this case on a contingent basis with the expectation that a favorable result will produce an enhanced fee, and was prepared to take this case through trial and/or appeals if that would have been in the best interests of the class. *Ex. NN.*  Indeed, the benchmark assumes this genuine risk of non-recovery.

In re Quantum Health Resources, Inc., 962 F. Supp. 1254, 1257-58 (C.D. Cal. 1997).  The benchmark recognizes that class counsel carry "the financial burden of the case, effectively prosecuting it and, by reason of their expert handling of the case, achieving a just settlement for the class." Torrisi, 8 F.3d at 1377.  "If this 'bonus' methology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." Washington Public Power Supply Sys. Sec. Litig., 19 F.3d 1291 (9th Cir. 1994).  As the Ninth Circuit has recognized, "attorneys whose compensation depends on their winning the case[] must make up in compensation in the cases they win for the lack of compensation in the cases they lose." Vizcaino, 290 F.3d at 1051.  Indeed, class counsel prosecute class action cases on a double contingency basis—they must prevail on class certification, prevail on the merits of the claim, and then collect what they win.  Torrisi, 8 F.3d at 1377.

Furthermore, the relief available to class members under this settlement includes past reimbursement, future reimbursement, extended warranty coverage for the VTi transmission (without any conditions or exclusions) through 125,000 miles, and the payment of Class Counsel's attorneys' fees, notice, and administrative costs.  Therefore, Class Counsel have continuing obligations through at least March 1, 2012.  See Wing v. Asarco Inc., 114 F.3d 986, 988-89 (9th Cir. 1997) (discussing class counsel's continuing obligations).  Since the settlement provides substantial future relief to the class, Class Counsel's continuing obligations to the class are substantially more involved than a typical class settlement.  Doc. 48-2 and 67 at Ex. NN.

The negotiated attorneys' fees here are also comparable to (actually less than) attorneys' fees and costs awarded in similar class actions.  See, e.g., Hanlon, 150 F.3d at 1029 (9th Cir. 1998) (awarding $5.2 million attorneys' fees and costs for $100 million settlement involving repair of defective door latch); O'Keefe, 214 F.R.D. at 304 (E.D. Pa. 2003) (awarding $4,896,783 in attorneys' fees and costs for $32,645,220 settlement involving extended warranty for very limited problem); Community Care Centers, Inc., 716 N.E.2d at 546 (affirming $6.25 million attorneys' fee award based upon $65 million class benefit); Schwartz v. Citibank (South Dakota), N.A., 2002 WL 31269818 at *2 (9th Cir. 2002) (affirming $7.2 million attorneys' fee award based upon $36 million class benefit); Vizcaino, 290 F.3d at 1050 (affirming $27,127,800

attorneys' fee award based upon $96.885 million class benefit); Torrisi, 8 F.3d at 1376-77 (affirming $7.5 million attorneys' fee award based upon $30 million class benefit); Van Vranken v. Atlantic Richfield Co., 901 F.Supp. 294, 297 (N.D. Cal. 1995) (granting $19,180,803.07 attorneys' fees and $2,406,606.90 in expenses based upon $76 million benefit); In re Heritage Bond Litigation, 2005 WL 1594389 at *6, *20 (C.D. Cal. 2005) (granting $9,260,073.90 attorneys' fees award based upon $27,783,000 class benefit);  Craft v. County of San Bernardino, 2008 WL 916965 at *14 (C.D. Cal. 2008) (granting $6,375,000 attorneys' fees based upon a $25,648,204 class benefit); In re Int'l Air Trans. Surcharge Antitrust Litig., 2008 WL 4766824 at *1, *3 (N.D. Cal. 2008) (granting $23 million attorneys' fees and costs based upon $196,507,273 benefit).  Here, GM agreed to pay and Class Counsel agreed to accept $4,425,000 in attorneys' fees and expenses where the total value of the class settlement is conservatively estimated at $61,742,250. *Doc. 48-2 and 67 at Exs. KK, OO.*

Finally, Class Counsel has invested (and will continue to invest) a significant amount of time, effort, and money in this case. *Doc. 67 at Ex. NN.*  Before filing the lawsuit, Class Counsel spent at least six (6) months thoroughly investigating this case. *Id.*  During that investigation, Class Counsel retained a consulting expert, assigned several investigators and paralegals to answer calls and interview potential class members, and assigned at least three attorneys and a paralegal to research legal theories, class certification issues, and general CVT technology and/or transmissions. *Id.*  After filing the lawsuit, Class Counsel immediately commenced discovery and prepared for certification briefing once this Court issued the scheduling order on December 20, 2007. *Id.*  Class Counsel subpoenaed documents, reviewed GM's production, deposed GM personnel, and drafted a preliminary certification memorandum. *Id.*  After the parties reached the Settlement, Class Counsel assisted in drafting the Settlement documents, drafted the preliminary approval papers, monitored the preparation of notice, and has continued to respond to class member inquires. *Id.*  In fact, 504 class members had contacted Class Counsel before January 9, 2009—the date notice was mailed to the class. *Doc. 67 at Exs. JJ, NN.*  Since that date, 1518 additional class members have contacted Class Counsel. *Doc. 67 at Ex. NN.*  Class Counsel have continuously updated their website with relevant information, including frequently asked questions, and provided email updates to class members. *Id.*  Class Counsel will be

responding to any class member inquires through at least March 1, 2012, monitoring claims, and challenging denials whenever appropriate.

In light of the degree of risk, Class Counsel achieved exceptional results for the Class. Class Counsel should not necessarily receive a lesser fee for settling a case quickly. <u>Steiner</u>, 2007 WL 2460326 at *2 (9th Cir. 2007).

In *Schwartz*, the court adjusted the benchmark downward because the case settled quickly. <u>Schwartz v. Citibank (S. Dak.), N.A.</u>, CV 00-00075 LGB (C.D. Calif. Dec. 14, 2000). There, the first plaintiff filed on October 1, 1999, and the preliminary approval hearing occurred on April 27, 2000. <u>Id.</u> at 2. The settlement provided $18 million in cash, another $18 million in injunctive relief, and $9 million in attorneys' fees and another $250,000 in expenses. <u>Id.</u> at 3. With relatively little motion practice and a quick resolution, the court concluded that a "downward adjustment of the benchmark to 20% is reasonable." <u>Id.</u> at 23. The court reasoned that twenty percent (20%) achieved the appropriate balance between compensating class counsel within the "normal range of 20% to 30%" and the effort expended. <u>Id.</u> As a result, the court awarded counsel $7.2 million in attorneys' fees and $157,541.47 in expenses. <u>Id.</u> at 25, *aff'd*, 50 Fed. Appx. 832 (9th Cir. 2002).

Here, there is no justification to lower the percentage of attorneys' fees negotiated by the parties—especially since the percentage is well below both the benchmark and the "normal range" of fees. In this case, the benchmark results in $15,435,562 in attorneys' fees (*i.e.*, $61,742,250 X 25%). *Doc. 67 at Exs. KK, OO.* GM agreed to pay and Class Counsel agreed to accept $4,425,000 in attorneys' fees and expenses. *Doc. No. 48-2 at ¶¶ II.16, III.7, III.9.* This amount represents 7.17% of the conservatively estimated value of class relief provided under the Settlement. *Doc. 67 at Exs. KK, OO.* Because the attorneys' fees and costs fall well below the benchmark established by the Ninth Circuit, they are reasonable.

For all the foregoing reasons, Class Counsel should be awarded $4,425,000 in attorneys' fees and costs. The attorneys' fees and costs negotiated by the parties represent 7.17% of the total value of the Settlement, are far below the twenty five percent (25%) benchmark established by the Ninth Circuit, and even below the bottom of the "normal range" of attorneys' fees in class action cases. *Doc. 67 at Exs. KK, OO.*

**B.    A LODESTAR CROSS-CHECK ANALYSIS IS UNNECESSARY, BUT CONFIRMS THAT THE NEGOTIATED ATTORNEYS' FEES AND COSTS ARE REASONABLE.**

Where attorneys' fees and costs diminish class benefits, courts compare the attorneys' fees to a benchmark and may also apply a lodestar cross-check to provide perspective in determining the appropriate percentage of the class benefit.  <u>Vizcaino</u>, 290 F.3d at 1050.  The lodestar cross-check, however, is not mandatory.  <u>McKenna v. Sears, Roebuck & Co.</u>, 1997 WL 349024 at *1 (9th Cir. 1997).

The attorneys' fees here, of course, do ***not*** diminish class benefits.  *Doc. No. 48-2 at ¶III.7.*  Moreover, the Settlement provides for GM to pay attorneys' fees and costs of $4,425,000.  *Doc. No. 48-2 at ¶¶ II.16, III.7, III.9.*  Under these circumstances, the Ninth Circuit has held that a lodestar cross-check is altogether unnecessary:

> The settlement agreement provides for an award of attorneys' fees equal to ten percent of the amount refunded, with $800,000 of those fees to be paid on a non-refundable basis from a reserve account established by the defendants. … Brown also suggests that detailed time records should have been submitted in support of the fee award.  However, under the settlement agreement, attorneys' fees are to be calculated as a percentage of the total recovery.  Thus, it is not clear what purpose submission of time records would have served.

<u>Arata v. NU Skin Int'l, Inc.</u>, 5 F.3d 534, 1993 WL 321710 at *4 (9th Cir. 1993).

Unlike an agreement by the parties or a percentage of the class benefit method for calculating fees, the lodestar analysis has several flaws.

> No one expects a lawyer whose compensation is contingent on success of his services to charge, when successful, as little as he would charge a client who in advance has agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

<u>In Re Sumitomo Copper Litig.</u>, 74 F. Supp. 2d 393, 396 (S.D.N.Y. 1999).  In addition, "the loadstar calculation may convince a court that a lower percentage is reasonable" when "class counsel should not 'necessarily receive a lesser fee for settling a case quickly.'"  <u>Steiner</u>, 2007

WL 2460326 at *2; <u>Vizcaino</u>, 290 F.3d at 1050.  Finally, a lodestar analysis is more difficult to conduct where Class Counsel will continue to spend time and expense representing the Class through at least March 1, 2012.

If this Court conducts a lodestar cross-check, then it must start at the benchmark of twenty-five percent (25%) of the total class benefit. <u>Vizcaino</u>, 290 F.3d at 1047-48; <u>Torrisi</u>, 8 F.3d at 1376; <u>Six Mexican Workers</u>, 904 F.2d at 1311; <u>Paul, Johnson, Alston & Hunt</u>, 886 F.2d at 272.  Because the total value of the Settlement is conservatively at least $61,652,250, this Court must begin its analysis at $15,435,562 in attorneys' fees. *Doc. 67 at Exs. KK, OO.*

When considering the lodestar method, a court considers twelve factors.  <u>Fischel v. Equitable Life Assur. Soc. of U.S.</u>, 307 F.3d 997, 1007 n.7 (9th Cir. 2002); <u>Evans v. Paradise Motors, Inc.</u>, 788 F. Supp. 1079, 1081-82 (N.D. Cal. 1991).  The twelve factors include: "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusions of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." <u>Id.</u>

Since being contacted in the Spring of 2007 through February 20, 2009, Class Counsel have dedicated 4,062.75 hours, at a value of $907,146.60, and they have spent $99,674.51 in costs on behalf of the Class.[3]  *Doc. 67 at Exs. NN, QQ.*  That time includes, but is not limited to: an exhaustive factual pre-litigation investigation about possible problems with the Saturn VTi transmission, a substantial pre-litigation legal analysis of potential claims against GM for problems with the Saturn VTi transmission, the preparation of the class action complaint, the

---

[3]  Time spent by law clerks, paralegals, and legal assistants is compensable.  *See* <u>Missouri v. Jenkins</u>, 491 U.S. 274, 286 (1989); <u>United Steelworkers v. Phelps Dodge Corp.</u>, 896 F.2d 403, 407 (9th Cir. 1990).  In 2006, the prevailing hourly rate for legal assistants was $110 per hour. <u>Hoirup v. Professional Eng. In Calif. Gov.</u>, 2006 WL 2791158 at *5 (E.D. Calif. Sept. 25, 2006).

preparation and analysis of additional complaints and/or amended complaints in this and other jurisdictions along with a motion to coordinate and consolidate through the multi-district litigation panel, a thorough legal analysis of uniformity of law issues for class certification, briefing an opposition to GM's motion to dismiss, preparation of the class certification memorandum, discovery involving GM, discovery involving third-parties, communication with clients and potential class members who contacted Class Counsel, the negotiation and drafting of the settlement documents, the preparation of preliminary approval pleadings, the preparation of final approval pleadings, and attendance at court hearings. *Doc. 67 at Ex. NN.*

In addition to time spent through final approval, Class Counsel will continue to represent the Class through at least March 1, 2012. *Doc. 48-2.* While somewhat difficult to estimate, Class Counsel anticipates spending a considerable amount of time: monitoring the administration of the settlement (*e.g.*, issuing the second notice, reviewing the dealer notice and materials, monitoring accuracy of payments, confirming the timeliness of payments, *etc.*); responding to questions from class members; assisting class members with claims; investigating claim denials; responding and/or challenging claim denials where appropriate; and otherwise representing class members regarding their rights under the Settlement. *Doc. 67 at Ex. NN.* Based upon actual experience, an average of 22 class members ***per month*** contacted Class Counsel before notice was mailed. *Doc. 67 at Ex. NN.* After notice was mailed, an average of 35 class members ***per day*** have contacted Class Counsel. *Id.* Based upon experience with this particular case and other class action settlements, Class Counsel reasonably estimate expending another $200,000 of time this case.[4] *Id.*

Apart from the time spent to date, this case involved complex and difficult questions. A class action is generally viewed "as being most complex." In re Heritage Bond Lit., 2005 WL

---

[4] It should also be noted that it is appropriate to consider time spent establishing, litigating, and defending reasonable attorneys' fees. Kinney v. International Bro. of Elec. Workers, 939 F.2d 690, 695 (9th Cir. 1991); Southeast Legal Defense Group v. Adams, 657 F.2d 1118, 1126 (9th Cir. 1981). Class Counsel have expended $24,035.10 in time preparing this motion and the supporting evidence. *Doc. 67 at Ex. NN.*

1594403 at *6 (C.D. Cal. 2005).  To assess the novelty and difficulty of the questions involved, a court looks at the issues presented in the particular case. <u>Comite De Jornaleros De Redondo Beach. v. City of Redondo Beach</u>, 2006 WL 4081215 at *9 (C.D. Cal. 2006).  Class Counsel pleaded four theories of recovery (Statutory Consumer Fraud, Breach of Express Warranties, Breach of Implied Warranty of Merchantability, and Unjust Enrichment), and the case involves highly technical and complex transmission technology. *Doc. 55 and Ex. NN.*  At the Preliminary Approval hearing, this Court stated that it had "opinions about the potential merits" and it had "serious question" about the Plaintiffs' case. *Doc. 67 at Ex. RR at p. 2:11-13.*  Moreover, this factor considers Plaintiffs' "low likelihood of prevailing at trial … for reasons having nothing to do with the merits of the claim or the quality of the attorney's performance." <u>Gomez v. Gates</u>, 804 F. Supp. 69, 75 (C.D. Cal. 1992).  This case certainly involved difficult questions and substantial risk for Class Counsel. *Doc. 67 at Ex. NN.*

A "complex national class action requires unique legal skills and abilities. <u>In re Omnivision Techn., Inc.</u>, 559 F.Supp.2d 1036, 1047 (N.D. Cal. 2008).  Class Counsel has substantial experience in class action litigation. *Doc. 67 at Exs. NN- 00, QQ, and V.*  Due to the substantial resources dedicated to the investigation, prosecution, settlement, and supervision of this case, Class Counsel also did not pursue other opportunities. *Doc. 67 at Ex. NN.*  As one court noted, cases are increasingly more undesirable for attorneys "who regularly accepts employment on a contingent fee basis." <u>Gomez</u>, 804 F. Supp. at 79.

The hourly rates charged by Class Counsel are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." <u>Abad v. Williams, Cohen & Gray, Inc.</u>, 2007 WL 1839914 at *2 (9th Cir. 2007).  Class Counsel's rates are based on the rates that comparably experienced and skilled lawyers command in the market place.  For a more detailed description of how Class Counsel have established their rates, see *Doc. 67 at Exs. NN, QQ.*

The application of a risk multiplier is necessary "when (1) attorneys take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence that the case was risky." <u>Fischel</u>, 307 F.3d at 1007-1010.  The expectation of a multiplier is "reasonable" for attorneys who represent a class on a

contingency basis. <u>Washington Public Power Supply Sys. Sec. Litig.</u>, 19 F.3d at 1302. As a result, it is an abuse of discretion to fail to apply a multiplier. <u>Id.</u>; <u>Fischel</u>, 307 F.3d at 1007-10.

When applying a multiplier, a court also considers: (1) the quality of defendant's opposition, (2) the ongoing and continuing responsibilities class counsel would have in the case, and (3) the quality of the work of class counsel and the results obtained. <u>Wing</u>, 114 F.3d at 988-989. The continuing obligations include, among other tasks, being available to answer class members' questions, developing a plan for distribution of the settlement proceeds, and overseeing the distributions. <u>Id.</u> at 989.

The agreed amount of attorneys' fees and expenses of $4,425,000 results in a risk multiplier of 4.88 ***at this time***. *Doc. 48-2; Doc. 67 at Exs. NN, QQ.* That multiplier does not take into account the out-of-pocket costs expended by Class Counsel and assumes that they will perform no additional work for the remainder of the Settlement through at least March 1, 2012. Even with those assumptions that overstate the multiplier, such a multiplier is not inappropriate. *See, e.g.,* <u>In re Merry-Go-Round Enterp., Inc.</u>, 244 B.R. 327 (Bankr. D. Md. 2000) (involving cross-check multiplier of 19.6); <u>Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.</u>, 2005 WL 1213926 (E.D. Pa. 2005) (involving cross-check multiplier of 15.6); <u>In re Rite Aid Corp. Sec. Litig.</u>, 146 F. Supp.2d 706 (E.D. Pa. 2001) (involving cross-check multiplier between 4.5-8.5); <u>In re Cendant Corp. PRIDES Litig.</u>, 243 F.3d 722, 732 (3d Cir. 2001) (involving cross-check multiplier of 7); <u>Cosgrove v. Sullivan</u>, 759 F. Supp. 166, 167 n.1 (S.D.N.Y. 1991) (involving cross-check multiplier of 8.74).

In addition to the risk of not prevailing, this Court issued an aggressive scheduling order. *Doc. 17.* On December 20, 2007, this Court set a deadline for class certification briefing for July 18, 2008. *Id.* Class Counsel worked diligently to complete discovery and meet the class certification briefing schedule. *Doc. 67 at Ex. NN.* Through their pre-lawsuit investigation, Class Counsel were thoroughly prepared to serve discovery and work toward class certification under the time limitations imposed by this Court. *Id.* Under that time limitation, Class Counsel achieved an exceptional result for the Class. *Id.* The Settlement provides unprecedented warranty coverage for unlimited transmission-related problems. *Doc 48-2.*

The experience, reputation, and ability of Class Counsel also support the requested attorneys' fees and costs.  *Doc. 67 at Exs. V, NN, OO, and QQ.*  With their outstanding attorneys, paralegals, and support staff, Class Counsel have not only recovered substantial sums for consumers, but also changed the legal landscape for consumers.  *Doc. 48-2 and 67 at Ex. NN.*  In addition, three attorneys and one paralegal worked at Sonnenschein Nath & Rosenthal—a law firm with an "exceptional" reputation for work in defending class actions.  <u>Dehoyos</u>, 240 F.R.D. at 325 and *Doc. 67 at Exs. NN-00.*  Furthermore, three attorneys were recently selected as 2009 Illinois *Super Lawyers*.  *Doc. 67 at Ex.NN.*  The experience, reputation, and ability of Class Counsel brought about this tremendous result for the Class.

Finally, the awards of attorneys' fees in similar cases support the award of $4,425,000 in attorneys' fees and costs here.  *See, e.g.,* <u>Hanlon</u>, 150 F.3d at 1029 (awarding $5.2 million attorneys' fees and costs for $100 million settlement involving repair of defective door latch); <u>O'Keefe</u>, 214 F.R.D. at 304 (awarding $4,896,783 in attorneys' fees and costs for $32,645,220 settlement involving extended warranty for very limited problem).

Beginning with the benchmark attorneys' fees of $15,435,562 (i.e., $61,742,250 X 25%), all of the factors support application of the benchmark.  Nonetheless, Class Counsel and GM negotiated attorneys' fees and costs of $4,425,000—a mere 7.17 percent of the conservatively estimated total value of the Settlement.  Moreover, the agreed attorneys' fees result in a lodestar risk multiplier of 4.88 without any deduction of expenses or any increase for future time.  *Doc. 67 at Exs. KK, OO.*

### III.   CLASS COUNSEL'S EXPENSES ARE REASONABLE.

Through February 26, 2009, Class Counsel have incurred $99,674.51 in expenses and costs relating to the prosecution of this case.  *Doc. 67 at Exs. NN and QQ.*

### CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that this Court award each Class Representative the negotiated incentive payment of $2,500, and award Class Counsel their reasonable and negotiated attorneys' fees and costs in the total amount of $4,425,000.

Dated:  February 27, 2009                    Respectfully submitted,

                                             LAKINCHAPMAN LLC

                                             s/  Robert W. Schmieder II
                                             LAKINCHAPMAN LLC
                                             Robert W. Schmieder II (admitted *pro hac vice*)
                                             Mark L. Brown (admitted *pro hac vice*)
                                             300 Evans Avenue
                                             P.O. Box 229
                                             Wood River, Illinois 62095
                                             Telephone:  (618) 254-1127
                                             Facsimile:   (618) 254-0193

                                             C. Brooks Cutter, SBN 121407
                                             KERSHAW CUTTER & RATINOFF LLP
                                             401 Watt Avenue
                                             Sacramento, California 95864
                                             Telephone:  (916) 448-9800
                                             Facsimile:   (916) 669-4499

Robert W. Schmieder II (admitted *pro hac vice*)
Mark L. Brown (admitted *pro hac vice*)
LAKINCHAPMAN LLC
300 Evans Avenue
P.O. Box 229
Wood River, Illinois 62095
Telephone:  (618) 254-1127
Facsimile:   (618) 254-0193

C. Brooks Cutter, SBN, 121407
KERSHAW CUTTER & RATINOFF LLP
401 Watt Avenue
Sacramento, California 95864
Telephone:  (916) 448-9800
Facsimile:   (916) 669-4499

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY CASTILLO, NICHOLE BROWN, BRENDA ALEXIS DIGIANDOMENICO, VALERIE EVANS, BARBARA GLISSON, STANLEY OZAROWSKI, and DONNA SANTI, *Individually and on behalf of all others similarly situated*,<br><br>        Plaintiffs,<br><br>        v.<br><br>GENERAL MOTORS CORPORATION,<br><br>        Defendants. | Case No.: 2:07-CV-02142  WBS-GGH<br><br>**CERTIFICATE OF SERVICE** |

    I hereby certify that on February 27, 2009, I electronically filed Class Counsel's Motion for

Incentive Payment to Class Representatives and Attorneys' Fees and Costs with the Clerk of

Court using the CM/ECF system, which will send notification of such filings(s) to the following:

    Gregory Oxford
    goxford@icclawfirm.com; arobinson@icclawfirm.com

Respectfully submitted,

s/ Robert W. Schmieder II

LAKINCHAPMAN LLC
300 Evans Avenue
P.O. Box 229
Wood River, IL 62095-0229
Telephone:  (618) 254-1127
 Facsimile:   (618) 254-0193