GREGORY R. OXFORD (S.B. #62333)
ISAACS CLOUSE CROSE & OXFORD LLP
21515 Hawthorne Boulevard, Suite 950
Torrance, California 90503
Telephone: (310) 316-1990
Facsimile: (310) 316-1330

Attorneys for Defendant
General Motors Corporation

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY CASTILLO, NICHOLE BROWN, and BARBARA GLISSON, *Individually and on behalf of all others similarly situated,*<br><br>　　　　　　　Plaintiffs,<br>　　v.<br>GENERAL MOTORS CORPORATION,<br>　　　　　　　Defendant. | Case No. 2:07-CV-02142 WBS-GGH<br><br>**STIPULATION AND [PROPOSED] ORDER RE CREATION OF SUBCLASS, APPROVAL OF SUBCLASS NOTICE, AND HEARINGS ON APPROVAL OF CLASS AND SUBCLASS SETTLEMENTS**<br><br>Hearing Date:　March 30, 2009<br>Time:　　　　　2:00 p.m. |

## **RECITALS**

1.　　R. L. Polk & Co. ("Polk") is a third-party vendor which GM engaged to generate the list of current and former owners of class vehicles that GM utilized in providing notice of the Settlement to the Class ("Mailing List"). Polk is the only company with comprehensive access to fifty state motor vehicle registration information for past and current vehicle owners along with their most current address information. The specific process that Polk used to generate the Mailing List is explained in the Declaration submitted by Polk on February 27, 2009. (Doc. No. 66.)

2.　　On Thursday, March 12, 2009, GM's counsel first learned from Polk that two discrete computer programming errors by Polk which Polk had discovered a few days

earlier had caused the omission from the Mailing List of certain individuals and businesses who are members of the Class provisionally certified by the Court. Both of these errors resulted from a process that Polk routinely runs to avoid including duplicate names on mailing lists, a process called "de-duping." Polk discovered these errors in the course of responding to a request by Class Counsel for additional Mailing List information.

3. The first error caused the first letter of individual Class Members' last names shown in the vehicle registration data to be inserted as the customer's middle initial on the Mailing List. Thus, for example, the names "John Y. Jones," "John J. Jones" and "John Jones" [no middle initial] as they appeared in the registration data for the same Vehicle Identification Number ("VIN") all became "John J. Jones" in the Mailing List. As a result, when Polk ran the "de-duping" program on these three identical names associate with a specific VIN, it erroneously eliminated all of these names from the Mailing List except the one with the most recent "transaction date." The term "transaction date" includes the initial vehicle registration, changes of address and renewals by each individual owner as well as any changes of ownership and registration, changes of address and renewals by the subsequent owner(s). Altogether, this error caused the omission from the Mailing List of 2,775 individual Class Member records. This does not mean, however, that the notice of Settlement was not mailed to all of these Class Members. To the contrary, the parties and Polk believe that most of these omissions did not result in Class Members actually failing to receive notice because "John Jones" and "John M. Jones" in the above example are likely to be either the same person or related members of a single family. This conclusion is based on the slim chance that any particular vehicle would be owned successively by unrelated persons with identical first and last names. It is possible, however, that a small number of people who are prior owners of a Class vehicle identified by a particular VIN were removed from the Mailing List during the "de-duping" procedure because a subsequent owner of the same vehicle coincidentally happened to have the same first and last names as the prior owner.

*Declaration of John Ellison*

4.     The second error stemmed from the de-duping of the names of businesses which own or owned Class Vehicles identified by particular VINs. In those cases where more than one business owned a Class Vehicle identified by a specific VIN, the Polk de-duping process in error was set up to compare the personal name fields in the owner registration records. In the case of businesses, however, the personal name field was always blank. Thus, whenever a specific VIN was registered successively to two or more different businesses, the de-duping program erroneously eliminated all of the registration records except the one with the latest "transaction date" (as explained above). So for, example, if ABC Corporation bought a specific Saturn ION with a specific VIN and then sold it to XYZ Corporation, which in turn sold it to MNO Corporation, both the ABC and XYZ registrations would have been omitted from the Mailing List, and the Settlement Notice would have been mailed only to MNO Corporation. This error caused the omission of 4,315 Class Member records from the Mailing List. It is likely that a significant but unknown number of these omissions resulted in the Settlement Notice not being mailed to the Class Member.

5.     GM advised Class Counsel of the Polk errors late in the afternoon on March 12, 2009, the same day that it learned of them. Subsequently GM and Class Counsel had further discussions with Polk to pin down the nature and scope of the errors and, specifically, the number of Class Members who may not have received timely notice of the Settlement. GM and Class Counsel also have had a series of discussions concerning the best way to remedy Polk's errors. On the one hand, Class Counsel does not want to delay the Settlement approval hearing set for March 30, 2009 because, in the event the Court approves the Settlement, Class Members will become eligible promptly to file claims for the Settlement benefits. On the other hand, Class Counsel and GM understand that Class Members whose names Polk erroneously omitted from the Mailing List are entitled to the same choice as other Class Members: to participate in the Settlement (if approved) or to remove themselves from the Class (*i.e.*, "opt out"). GM and Class Counsel, on behalf of the proposed Subclass of persons who may not have received notice

of the Settlement (as further defined below), have agreed to the following Stipulation to ensure that Subclass Members may receive their rights and benefits under the Settlement.

## **STIPULATION**

Based on the above recitals, **IT IS HEREBY STIPULATED**, by and between Class Counsel and GM, by and through its undersigned counsel of record, that the Court may enter its order as follows to address the notice issues created by the Polk programming errors, effectuate the proposed settlement as to all Class Members in accordance with the terms previously proposed in the Stipulation of Settlement, permit the Settlement approval hearing to proceed on March 30, 2009, and ensure the mailing of appropriate notice to Class Members potentially affected by Polk's errors:

(a) As to any members of the proposed Class (1) to whom the Settlement Notice was actually mailed or (2) who otherwise actually received notice of the Settlement on a timely basis, the Settlement approval hearing shall go forward on March 30, 2009;

(b) All other members of the proposed Class are excluded from the Class and, except for those who are shown on the "opt out" list (Doc. No. 67) as having submitted valid and timely requests for exclusion from the Class, will instead be members of a Subclass pursuant to F.R.Civ. P. 23(c)(5) ("Subclass Members").  GM on the date upon which the Final Notice and Claim Forms are mailed to Class Members will mail the original Notice of Settlement to Subclass Members with a cover letter and a Claim Form substantially similar to the attached Exhibit A informing them of (a) the possible mailing error, (2) their potential right to exclude themselves from the Subclass, and (3) a separate Subclass settlement approval hearing to be set on **June 1, 2009, at 2:00 p.m.**

(c) If the Court approves the Settlement as to Class Members at or after the March 30, 2009 hearing, the Court, so as not to delay the Effective Date of the Settlement and the ability of Class Members to claim Settlement benefits, will enter final judgment in favor of Class Members pursuant to F.R.Civ.P. 54(b) in substantially the form attached hereto as Exhibit B.

(d) If the Court subsequently approves the Settlement as to the proposed Subclass, the Court will enter final judgment in favor of Subclass Members in substantially the form attached hereto as Exhibit C. GM subsequently will mail Supplemental Final Notice and Claim Forms to potential Subclass Members in a form substantially similar to the Final Notice and Claim Forms mailed to Class Members.

(e) If the Settlement is approved as to Class Members, then absent an exclusion, Subclass Members will receive the benefits of the Settlement immediately and will have the ability to submit claims without further delay by submitting Claim Forms in substantially the form shown in the attached Exhibit A. Any claim submitted before the expiration of the Subclass opt-out deadline will constitute a waiver by the Subclass Member submitting the claim of the right to request exclusion from the Subclass and will affirm the Class Member's intent to be bound by the terms of the Settlement, including the release therein provided.

DATED: March 24, 2009

MARK BROWN
LAKIN CHAPMAN LLC

C. BROOKS CUTTER
KERSHAW, CUTTER & RATINOFF LLP

By: [s]_____
      Mark Brown

Attorneys for Plaintiffs
and the Class

DATED: March 24, 2009

GREGORY R. OXFORD
ISAACS CLOUSE CROSE & OXFORD LLP

By: [s]_____
      Gregory R. Oxford
Attorneys for Defendant
General Motors Corporation

*Declaration of Christopher M. Meagher*

Good cause appearing therefor, **IT IS SO ORDERED**

DATED: April 14, 2009

*[signature]*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE